## BROWN et al. *v.* UNION INSURANCE COMPANY.

Objections to the forms of proceedings, made for the first time after appeal, will be considered as having been waived, where the party by whom they are set up can suffer no injury thereby.

Though the neglect of the corporators to re-appoint officers may, in certain cases, suspend the existence of the corporation, it cannot be thus extinguished to the injury of its creditors. *Per Curiam :* A corporation never can dissolve itself so as to defeat any of the just rights of its creditors.

Where the members of a corporation neglect to appoint officers to the injury of its creditors, the court will appoint a manager to wind up the company.

Prescription will bar any proceedings, commenced by a creditor of a corporation, under the provisions of sec. 13 of the stat. of 20 March, 1839, by propounding interrogatories to a stock-holder to ascertain if he was not indebted to the corporation, where more than ten years had elapsed since the maturity of the last instalment due on the stock before the institution of the proceedings. C. C. 3508.

The presumption of payment, which the law raises in cases of prescription releasing from debt, is *juris et de jure.* In such cases the debtor is not required to produce any title, nor to be in good faith. C. C. 3494, 3496.

| | |
|---|---|
| 3 | 177 |
| 47 | 1379 |
| 3 | 177 |
| 50 | 794 |
| 3 | 177 |
| 52 | 453 |
| 52 | 1188 |
| 3 | 177 |
| 108 | 533 |
| 108 | 535 |
| 108 | 538 |
| 3 | 177 |
| 114 | 608 |
| 3 | 177 |
| 125 | 842 |

BROWN
*v.*
UNION INSU-
RANCE Co.

The rule that where a contract containing reciprocal and synallagmatic conventions continues to be executed by one of the parties, the other cannot refuse to execute his part, under the pretext of prescription, though those conventions be only accidental, forms no part of the law of prescription either under the Code Napoléon, or the Code of this State.

Where no period was fixed by the charter of an incorporated company for the payment of a portion of the subscription for each share of stock, but the directors were authorized to call in the amount at such time and in such proportions as they might see fit, a creditor of the company who wishes to enforce payment of the balance so due,'must resort to a direct action. The liability of a stock-holder for this balance cannot be enforced by proceedings authorized by sec. 13 of the stat. of 20 March, 1839. In such a case as no period was fixed for the payment of the balance due on the stock, no prescription can accrue against an action by a creditor of the company.

Where a share-holder in an incorporated company, not inhibited by its charter from dealing on credit. resists an action instituted to compel him to contribute to the payment of a note issued by the company on the ground that it was not authorized to issue notes, he must al. lege and prove that the note was given for purposes unsanctioned by, and prejudicial to, the share-holders, and that the holder was apprized of those facts when he took the note, or that he received it after maturity.

APPEAL from the Fifth District Court of New Orleans, *Buchanan*, J. The facts of the case are fully stated in the opinion of the court *infrd*.

*Barthe* and *Collins*, for the plaintiffs. The corporation was not dissolved. See Ang. and Ames on Corp., ch. 22, s. 3, pp. 735-6. The company were authorized to issue notes. Ibid. ch. 7, § 7, 8, p. 208, 242. 4 Rob. 517. 14 La. 511. 18 La. 405. 19 La. 405. 11 Rob. 336. 2 Rob. 579. 8 Rob. 244. 10 Rob. 440. 14 Wend. 20.

*Benjamin* and *Micou*, for the appellant. The record shows that the execution was issued on the 29th January, 1847. *Bullitt* was cited as garnishee on the 24th February, and answered on the 2d March. The execution was returned by the sheriff on the 15th March, 1847, as follows : " Defendants could not be found to demand the amount of this execution ; I therefore return the writ, nothing made." Judgment was rendered against *Bullitt*, on the 30th November, 1847, consequently when the judgment was so rendered there was no execution in the sheriff's hands. The service of garnishment is a seizure under execution. The garnishee is bound to pay to the sheriff, and such payment discharges the debt ; but if the sheriff has no writ, he has no power to receive, his seizure is at an end, and the garnishee could obtain no release by paying money into the sheriff's hands. This has been repeatedly held. *Rothschild* v. *Ramsay*, 2 La. 280. *Cochrane* v. *Bank of U. S.* 11 Rob. 64. When a seizure has once been made the sheriff is not to bring back the writ on the return day, but is authorized to keep it until the seizure is made effectual by sale or otherwise ; consequently, the return of the writ, is considered an abandonment of the seizure. *Catlett* v. *Black.* 1 Rob. 540. The moment the writ is returned into court, the authority of the sheriff ceases. *Raboteau* v. *Valeton.* 11 Rob. 219. The garnishment in this case was, therefore, at an end when the sheriff returned his writ, and all subsequent proceedings were erroneous and void.

The next ground of defence is that, before the proceedings against the garnishee, the defendants in the suit, the Insurance Company was dissolved, and was no longer in existence. See *Slee* v. *Broom*, 19 Johns. 475. *Briggs* v. *Penniman*, 8 Cowen, 387. 1 Hopkins' Ch. R. 301. If the corporation was dissolved no execution could have been legally issued, and no garnishment served.

Process of garnishment is merely a seizure of the credits of the defendant. It has been repeatedly held that no such process can issue, unless execution be in the hands of the sheriff. *Simpson* v. *Allain*, 7 Rob. 500. *Raboteau* v. *Valeton*, 11 Rob. *Catlett* v. *Black*, 1 Rob. If the writ is returned, the seizure falls. *Cochrane* v. *Bank of U. S.*, 11 Rob. 64. The garnishee is not permitted to represent the defendant. Although he may be aware that a good defence exists, the garnishee has no right to present that defence to the court. *Harman* v. *Loring*, 10 Mart. 568. *Kimball* v. *Plant*, 14 La. 511. *Lee* v. *Palmer*, 18 La. 405. He is regarded as a mere stake-holder ; the plaintiff and the defendant are the litigants. He can set up no plea whatever, unless it be for his

own protection, and not an interference with the merits of the plaintiff's demand. The counsel of the plaintiffs assert and rely upon this very principle, when they assume that the garnishee in this case cannot build a defence upon the nature of the debt, on which his judgment was rendered. Hence, a defendant is a necessary party in a garnishment. To make a court, there must be *judex, actor et reus*—to support a garnishment, there must be plaintiff, defendant and garnishee. The correctness of these principles, as applicable between natural persons, will not be questioned : are they not equally applicable to corporations? The latter are merely civil or artificial persons, having certain capacities and functions while they exist; but these capacities and functions cease when the corporation itself has ceased to exist. Representatives must be created, or claims against the corporation cannot be prosecuted. If the law of the land has not authorized the courts to appoint such representatives the legislature must interfere, as it has done by repeated statutes for the liquidation of the banks. The necessity for such representation is the same with corporations, as with natural persons. In both cases the mercy of the law forbids the confiscation of property which has no protector. *Eadem ratio, eadem lex.* On this point, we think it necessary to cite but one authority, because that is of the highest character : "for there is no pretence to say, that a *scire facias* can be maintained, and a judgment had thereon, against a dead corporation any more than against a dead man." Story, J., *Mumma* v. *Potomac Company*, 8 Peters' Rep. 286.

It is pretended, however, that this doctrine places it in the power of a corporation, by voluntary dissolution, to delay creditors. This mistake arises from the neglect to distinguish between a garnishment, and a direct suit against stockholders. Upon the dissolution of the corporation, the action against the stockholders individually is the remedy which the law allows. Hence they have a direct interest in maintaining the corporation, so long as a dollar remains in its *fisc* to pay creditors ; because the moment the corporation has ceased to exist, the creditors have no recourse except upon the corporators. The case of *Cucullu* v. *The Union Insurance Company*, 2 Rob. 577, is cited in opposition to this principle. When that case is properly examined, it supports, instead of weakening, the position we have assumed. It was not alleged in that case that the corporation had ceased to exist, nor was any exception taken to the right of the plaintiff to his execution and garnishment. Consequently, the point which we now make, was not before the court; yet what was the language of the court on the subject? "We are further of opinion, that whenever the stock-holders neglect or refuse to elect directors, to manage its affairs, and keep it in operation, or elect persons who will not call in stock to pay the debts which may have been contracted, the creditors *will have an action* to compel them to pay." Although the question of the *kind of action* was not before them, it is obvious that the judges had in mind a direct action. It is true that the case arose by a garnishment, but as no exceptions were filed, there was no necessity of drawing the distinction between that and any other form of action.

But it may be asked, if we admit that the creditor has his direct action, why should he not have his process of garnishment? It is because the garnishee cannot defend or inquire into the merits of the main action, that the corporator has the right to demand a form of suit, in which he can make such defence.

The next point to be considered is whether, if the process be admissible, a case was made out for judgment against the garnishee. The garnishee, if held at all, is held merely as the debtor of the corporation. The theory of the process is that a credit of the defendant is sequestered, and applied to the debt due to the plaintiff. If the defendant could not himself recover from the garnishee, by a direct action, the plaintiff cannot, by seizure, enforce the payment. Could the Insurance Company recover from *Bullitt* the sum of $4,500, alleged to be due by him to said company ? This question is to be decided by reference to the charter. It provides that five dollars should be paid at the time of subscribing ; twenty-five dollars, by promissory notes, payable at periods from thirty days to six months from the time of subscription ; and the remaining twenty dollars at such time, and in such manner as the directors should direct. The charter bears date on the 7th March, 1636; the books were required to be opened before the 1st of April of that year; and all the payments required on fixed days, were due and payable within the year 1836.

BROWN
*v.*
UNION INSU-
RANCE CO.

The unpaid portion of the stock was thus divided into distinct portions—one payable on a certain day, without any action of the board of directors, and the other portion depending wholly upon a call to be made by the board. For the first portion, it is certain that the corporation had a direct action against the stock-holder, from the maturity of the instalments. The neglect to give a note, would have been no defence; because, after the term had expired, the money was due upon the subscription, as it would have been upon the note. It is equally certain that the corporation could have had no action for the last portion, without a formal call of the board. That call must have been made by a resolution ,equally binding upon all the stock-holders, before any one of them could be sued.

In the late case of *Purton* v. *New Orleans and Carrollton Railroad Company,* this court expressed the opinion, that the liability of stock-holders to pay upon a call, was not an absolute liability; that the call was an uncertain event, and might never be made—the *dies incertus* of the civil law—the uncertain event of the Code, which makes the promise a conditional one. As this condition never happened the obligation never became absolute, and the company has not, and never had, an action for the twenty dollars promised upon a call. Hence, for this twenty dollars of the stock, as the defendants could not recover it, the plaintiffs in execution cannot enforce its payment by garnishment. .

Twenty-five dollars remain of the original subscription, payable by instalments in 1836. The process in this case was served in 1847. More than ten years had elapsed from the maturity of the demand, before the institution of a suit. If the corporation had instituted a direct action, the prescription of ten years would have been a complete bar to the demand. C. C. art. 2508.

*Barthe* and *Collins* in reply. As to the new ground, raised for the first time at this late period, to wit: "that when the judgment was rendered against the garnishee there was no execution in the sheriff's hands," the fact is, indeed, as stated ; but there are, in connexion with it, other facts which the court will consider. 1st. The *fi. fa.* was issued on the 29th January, 1847, and a few days after, while it was still in the hands of the sheriff, the interrogatories were served upon *Bullitt,* who answered them, and against whose answers a traverse was entered, and with whom an issue was made up, while said *fi. fa.* was still out. The trial of this issue was delayed ; and during this delay the sheriff erroneously made the return which is now relied on by the garnishee. 2d. This is the first time that the objection is urged. The act of 1839 appears to require that the interrogatories should be propounded upon the issuing of a *fieri facias ;* but, after answer and confession, or judgment against the garnishee, the law provides another process to recover the funds in his hands : "The court shall order him forthwith to deliver up said property, or pay such sum, to the sheriff ; and a copy of said order, with the receipt of the sheriff endorsed thereon. shall be delivered to said third person, and shall be decreed equivalent to a receipt from the debtor himself." After judgment against the garnishee, (no objection having been previously made in consequence of the return of the *fi. fa.,*) there is no longer any necessity, under this provision, for the original *fi. fa.* to remain in the hands of the sheriff. It would not enable him in take any measures against the garnishee or his property, nor to compel said garnishee to pay agreeably to the order of court. If the garnishee refuses, a *fi. fa.* must, after proper proceedings, be taken out against him individually. What interest then can he have in requiring the original *fi. fa.* to be kept by the sheriff? Is not the judgment of the court and the receipt on the order ,a full safeguard to him, specially provided for by law? And if he has no interest,—if he cannot be affected by it, why should he be permitted to exercise the right of refusing to pay on such a ground ? It is a general principle that technical exceptions, based upon errors and omissions of form in proceedings, are cured when parties proceed to trial without urging them. The garnishee has in this case virtually waived all such grounds ; and being fully protected in case of payment, he should not, we think, be permitted to take advantage, at this late stage, of an accidental return made by the sheriff.

The judgment of the court was pronounced by

ROST, J. The late firm of *Hermogene Brown & Co.,* obtained, before its bankruptcy, a judgment against the *Union Insurance Company,* upon a promissory note, subscribed by that institution to *A. St. Clair,* under whose endorsement the firm held it. After the bankruptcy of said firm, the assignee caused

this judgment, together with accounts, notes, and bills receivable belonging to it, to be sold at public auction, and *Alfred Boisblanc*, became the purchaser. He caused an execution to issue, and the sheriff finding no property of the defendants' to seize, *Boisblanc* presented a petition, under the provisions of the act of 1839, stating that he had reason to believe that *Cuthbert Bullitt* of this city was indebted to the defendants, and praying that the said *Bullitt* be ordered to answer on oath the following interrogatories. 1st. Are you not a subscriber to, or stockholder in, the *Union Insurance Company?* If so, for how many shares? Is it not for one hundred shares that you are a stockholder? 2d. Have you ever paid said stock in full? 3d. Have you ever paid more than $5 on each share of said stock? If yea, how much more, and when?

<div style="text-align: right; font-style: italic;">Brown<br>v.<br>Union Insurance Co.</div>

The garnishee having been ordered to answer, filed an exception, alleging that the defendants, formerly a body corporate, have not, since the year 1839, transacted any business or had any office, directors or officers; that they have long since forfeited their corporate functions, and among them that of appearing as a party in courts of justice; that said functions have been resumed by the State, and the corporation has to all intents ceased to exist; that the judgment of the plaintiffs was obtained upon a note of hand, drawn by the president and countersigned by the secretary of the company; that said company was organised and empowered to act only as an insurance company, and not to give notes or monied obligations; and that the stockholders of said company are not bound, nor can they be garnisheed, for such obligations. That no execution could issue against the defendants who were no longer in being, and that the attachment made in his hands, as well as the execution, are illegal and void.

The garnishee reserving the benefit of these exceptions answered the interrogatories in substance, as follows: In 1836, I subscribed for a number of shares in the Union Insurance Company. That number is shown by other evidence to be one hundred. I did not pay the stock in full; according to my recollection, only the cash payment of $5 per share was paid. He farther alleged that, notwithstanding his subscription, he was not a debtor to the company, and could not be held as garnishee, because he had long since abandoned his stock and ceased to be a stockholder; and because farther, any action of the company against him was barred by the prescription of ten years. The charter shows the shares to have been of $50 each; and upon the rule taken against the garnishee, and the traverse filed by *Boisblanc*, the court below considering that the said garnishee was indebted to the defendants in a larger amount than that claimed from him, gave judgment against him for the amount of the judgment, interests and costs. The garnishee appealed.

In the argument before this court exceptions have been taken, for the first time, to the form of the proceedings. The garnishee went to trial in the court below without urging them, and as he can suffer no injury by reason thereof, we must consider them as having been waived.

The first ground of defence is that, before the proceedings against the garnishee were had, the insurance company was dissolved, and the defendants in the suit no longer in being. The charter, granted in 1836, gives the corporation a duration of thirty-five years. It has not been avoided by the legislature; and we take it to be the settled rule that, although the neglect of corporations to reappoint their officers may, in certain cases, suspend their existence, they cannot be thus extinguished to the injury of creditors. Angell and Ames

on Corporations, new edition, p. 735, 736, ch. 27, sec. 3. Ibid p. 599. The case of *Slee* v. *Broom,* cited by the counsel for the appellant in opposition to this principle, was exceptional, and, as Chancellor Kent observes, a decision for the sake of the remedy and in favor of the creditors. The charter of the company in that case provided that creditors should have a direct action against the shareholders, after the dissolution of the corporation only. The action was brought by a creditor, alleging the dissolution, against a shareholder; and it was very properly determined that, as the shareholders had done every thing in their power to dissolve the company and to consider it as dissolved, the court, for the sake of giving the remedy to the creditor, would also consider it in that light. 19 Johnson R. 475.

A corporation never can dissolve itself so as to defeat any of the just rights of its creditors. In this case, the officers once appointed are required by the charter to continue in office until others are elected, and, if they should die, absent themselves, resign, or refuse to act, and it was made to appear that the shareholders neglected to appoint others to the injury of the creditors, we would, on a proper case being made out, feel ourselves authorized to order the appointment of a manager in the interim, for the purpose of winding up and putting an end to the concern. This appointment would in no wise differ from that of receiver, which our courts frequently make to settle the affairs of insolvent banks and partnerships. In the case of *Carlan* v. *Drury,* 1 Ves. and B. 154, involving the question of the neglect of the managers of the association of the Bankside Brewery to act, the Lord Chancellor said : "This court is not to be required on every occasion to take the management of every play-house and brewhouse in the kingdom. But if the case justified the interference of the court, it may appoint a manager in the interim, for the purpose of winding up and putting an end to the concern. If a case of delinquency was clearly made out, I do not hesitate to declare the court would act. But there must be a positive necessity for the interference, arising from the refusal or neglect of the committee to act." Under the equity powers vested in our courts and the imperative command of the law that, in cases not provided for, the judge shall proceed and decide according to equity, they might adopt a similar course, if it became necessary to prevent a failure of justice.

The next ground is that, the Insurance Company could not recover from the garnishee the sum alleged to be due by him for stock, and that the attaching creditor can only exercise against him the rights of the company. The charter divides the subscription into two distinct portions. The first is composed of the $5 paid at the time of subscribing, and of $25 more which were to be paid on each share by instalments fixed by the charter, and all falling due within the year 1836. The other portion is composed of the other $20, for the payment of which no period is fixed, the directors being authorized to call it in at such time and in such proportions as they might see fit. The $25 to be paid at fixed periods were due to the corporation, and formed part of the assets out of which its liabilities were to be satisfied. To the extent of that debt, the garnishment must be sustained, unless it is barred by lapse of time, as alleged by the garnishee.

More than ten years had elapsed from the maturity of the last instalment before the institution of these proceedings against him. Art. 3508 of the Civil Code provides that, all personal actions except those enumerated in the title of prescription, are prescribed by ten years, if the creditor be present, and by

twenty years if he be absent. The french text is: "*Toutes les actions person-
nelles généralement quelconques.*" The disposition is as universal as language
can make it.

The directors of the company had their choice either to consider the stock as
forfeited on the non-payment of the instalments at the periods fixed by the
charter, or to sue for those instalments. They neglected to act in the matter.
Supposing this neglect to have originated in fraudulent motives on their part and
that of the shareholders, the creditors of the company were not remediless;
they might have caused the company to be administered, and the calls necessary
to pay them to be made and enforced.

The prescription which operates a release from debt does not require that
the debtor thould produce any title, or that he should be in good faith. The
neglect of the creditor alone operates the prescription. . When he is present,
and his silence has continued ten years, the law presumes payment; that pre-
sumption is *juris et de jure;* and the statement of the garnishee in this case
that, according to his recollection, only the cash payment of $5 per share was
made, will not avail against it. Civil Code, arts. 3494, 3496. Good faith not
being required for this class of prescriptions, the relation which existed between
the garnishee and the defendants can be no obstacle to it. It was formerly
maintained by Dunod and other civilians, that when there is in a contract re-
ciprocal and synallagamatic conventions, as long as the contract is executed by
one of the parties, the other cannot refuse to execute it on his part, under the pretext
of prescription, even if those conventions should only be accidental. This was
called the rule of correlatives. An attempt was made to have it inserted in the
Napoléon Code, but it failed; and the rule forms no part of the law of prescrip-
tion, either in France or with us. We must hold, therefore, that the relations
of parties, under a contract or a charter, do not affect the general law on this
subject. Troplong, Prescription, vol. 2, no. 534.

For the $20 remaining on each share, the company had no action against the
garnishee without a formal call, made · upon all the shareholdes equally, and
then only for the share due by him. His liability to third persons for this por-
tion of the subscription, cannot be enforced by the process of garnishment.
They must resort to a direct action. *Purton* v. *New Orleans and Carrollton
Rail Road Company,* ante p. 19. As no term was fixed for the payment of it, it
is manifest that no prescription has accrued.

It has also been alleged as a ground of defence, that the company was not
authorized to issue promissory notes. This plea, as made, would not avail the
garnishee even in a direct action. The company is authorized by the charter
to make all contracts, to establish by-laws, to insure, and to settle, adjust and pay
all losses, according to their own rules and regulations. Its charter contains no
inhibition to deal on credit; and if the garnishee meant to insist that the note was
given for purposes unsanctioned by it and prejudicial to the shareholders, those
facts ought · to have been alleged and shown; and he should further have al-
leged and proved that *Hermogene Brown & Co.* were apprized of them when
they took the note, or that it was received by them after maturity. *Hill* v.
*Manchester and Salford Water Works Company.* 2 B. and Ad. 544.

For the reasons assigned, it is ordered that the judgment in this case be re-
versed. It is further ordered that the attachment made in the hands of *Cuth-
bert Bullitt* be dissolved, and that there be judgment in his favor, with costs in
both courts. It is further ordered that the rights of the seizing creditor in a
direct action be reserved.