Hon. EDGAR N. HARWOOD, } Associate Justices.
Hon. WILLIAM H. DE WITT, }

## MURPHY, RESPONDENT, v. PHELPS, APPELLANT.

[Argued March 11, 1892. Decided October 4, 1892.]

PLEADING—*Statute of Limitations—Defects cured by answering over.*—A complaint in an action on a note, appearing on its face to be barred by limitation, which alleges the indorsement on the note of the receipt of a certain sum, without a direct averment that the maker had paid any sum thereon, is bad on demurrer, but such defect is cured by answering over, and a trial of the issue framed by a denial of the payment purported by the indorsement.

NEGOTIABLE INSTRUMENTS—*Part payment — When holder must allow credit.*—When the holder of a note receives from the maker thereof a draft, properly indorsed, with the understanding that he will collect the same and credit the payment on the note, he is bound to allow the credit, unless upon the failure of the drawee to pay the draft he give due notice of its dishonor to his indorser.

*Appeal from Eighth Judicial District, Cascade County.*

Action upon a promissory note; tried before BENTON, J. Plaintiff had judgment below. Affirmed.

*A. J. Shores,* for Appellant.

*Day & Murphy,* for Respondent.

HARWOOD, J.— Plaintiff's action is founded upon a promissory note, dated September 4, 1884, and the action to enforce payment thereof was not commenced within the period of six years from said date. It is conceded that the action would be barred by the Statute of Limitations if no payment was made on the note to bring the claim within the period of limitation prescribed (Code Civ. Proc. § 54); but plaintiff maintains that a payment of $90.30 was made thereon December 6, 1888.

The first point raised by appellant is that the complaint fails to state facts sufficient to constitute a cause of action (Code Civ. Proc. § 88), in that it does not sufficiently allege any payment on said note. This objection could not be maintained under the old common-law rule that the Statute of Limitations must be specially pleaded if relied on as a defense. (1 Chitty on Pleading [ed. 1876], 506.) That rule, however, has been modified, by apparently the great preponderance of authority, to the effect that, where the complaint states facts from which it appears that the demand is barred by the provisions of the statute, it is then subject to demurrer. (Bliss on Code Pleading, 205, 235, and cases cited.)

The complaint in the case at bar purports to set forth the note sued on by copy, and also alleges that the same is indorsed, "December 30, 1888, received $90.30." In the sixth paragraph of the complaint is also found the averment that "said note of $558.26, less the indorsement thereon of $90.30, is now due and unpaid." A statement in a complaint that an indorsement of the receipt of a certain sum appears on the promissory note sued on is not an averment that the obligor has paid any sum thereof. The indorsement could be placed thereon without payment, and the statement in the complaint that the note is indorsed, "December 30, 1888, received $90.30," could be made in truth, although the maker of the note had paid nothing whatever thereon. Neither is the allegation of the sixth paragraph of the complaint, that "said note, less the indorsement thereon of $90.30, is now due and unpaid," an averment that said sum was paid on said note. It might be truly alleged that the amount of the note was due, less the amount of said indorsement, when in fact the whole amount of the note was due and unpaid, including the sum stated as indorsed thereon.

When the vital question is whether the claim is, or is not, barred by the Statute of Limitations, and the determination of such question depends upon the fact of the payment, such uncertain allegations as to that fact are insufficient. Therefore, if defendant had rested on his demurrer, we should be constrained to hold the complaint defective in thus failing to state facts sufficient to constitute a cause of action.

But defendant answered, positively denying that any such payment was made as purported to have been received by the alleged indorsement on said note. Herein the matter of the payment, although imperfectly alleged in the complaint, was treated as an averment of fact, and controverted. In connection with this, defendant pleaded the Statute of Limitations. On this point of pleading the statute provides: "In pleading the Statute of Limitations it is not necessary to state the facts showing the defense, but it may be stated generally that the cause of action is barred by the provisions of sections —— (giving the number of the section and the subdivision thereof, if it is so divided, relied upon) of the Code of Civil Procedure; and, if such allegation be controverted, the party pleading must establish on the trial the facts showing that the cause of action is so barred." (Code Civ. Proc. § 105.)

By replication the plaintiff controverted the allegation that said debt was barred by the Statute of Limitations, and the issue as to said payment became the principal issue tried in the action. These pleadings subsequent to the complaint, and the trial of the issue thus formed, cured such defect as there was in the allegation of the complaint as to said payment. (*Erwin* v. *Shaffer*, 9 Ohio St. 43; 72 Am. Dec. 613; *Sweeney* v. *Great Falls Co.* 11 Mont. 523; *Hogan* v. *Shuart*, 11 Mont. 498; *Orr* v. *Haskell*, 2 Mont. 229; *Territory* v. *Cox*, 3 Mont. 203; *Quirk* v. *Clark*, 7 Mont. 231; *Palmer* v. *Arthur*, 131 U. S. 64.)

Appellant's motion for new trial is based upon alleged error of law occurring at the trial, and excepted to; and also on the ground that the evidence is insufficient to justify the decision of the court. Under the latter alleged ground it is specified and insisted that the evidence is insufficient to sustain the finding that said alleged payment was made on said note. This

assignment cannot be sustained, in view of the testimony disclosed by the record.

It appears that the note sued on was secured by mortgage, executed by Nellie Corson and Isaac S. Corson, her husband, on certain land situate in Cascade County, now owned by defendant Phelps, and this action was brought to foreclose said mortgage, and cause said land to be sold, and the proceeds applied to the payment of the amount alleged to be due on said note. It further appears that a portion of said land was crossed by the Montana Central Railroad. It is testified by plaintiff, as witness on his own behalf, and by Isaac S. Corson, called on behalf of defendant, that, before said land was conveyed to defendant Phelps, said railroad company made and delivered to Nellie Corson a check or draft for the payment of $90.30, which sum was to be in payment for the right of way of said railroad across said land. It appears to also be admitted by both parties that said draft should have been accompanied by a voucher, namely, a deed conveying said right of way to said railroad company, executed by said Corsons, in order to complete the transaction, and make said draft payable on presentation to said company. Plaintiff testified that said draft or check was delivered to him by Isaac S. Corson, indorsed so as to make the same payable to plaintiff, with the understanding between them that plaintiff should collect the amount of said draft, and credit that amount as payment on said note, of which plaintiff was the holder; and that said draft was accompanied by a deed for said right of way. Isaac S. Corson was called as a witness for defendant, and his testimony corroborates that of plaintiff as to the existence and delivery of said draft to plaintiff. He says: "I don't remember as to giving Mr. Murphy the check. It might have been a sight draft. Gave him a voucher on the Montana Central Railroad for $90.30; payable at the Montana National Bank. The payment of the voucher was conditioned on the delivery of a deed to the Montana Central Railway Company of a right of way. I have no recollection of making any such deed." Plaintiff testified that "Mr. Corson gave me this voucher or draft, together with the deed for the land — $90.30 — which I received from him, and subsequently Mrs. Corson asked me if I had allowed the pay-

ment of $90.30. I told her I had, upon this note." Isaac S.
Corson was called on behalf of plaintiff, and in his testimony
said: "I had cause to give further thought in reference to the
testimony about myself and Mrs. Corson making a deed to the
Montana Central Railway Company. Mr. Murphy showed me
a letter that I had written in regard to a deed. I do not know
quite positively as to the execution of that deed. I remember
now that there was a deed sent down by Mr. Eddy, but I
haven't it now. I remember the deed being sent down by him,
all right enough, but I haven't it. I remember turning over
the voucher; can't say positively as to the deed. That letter
refers to the right of way to the Montana Central. It was
through Mrs. Corson's land at Cascade, the land in controversy
in this case. I can't say positively what I did with the deed.
I have a recollection of a deed being made, and in my posses-
sion, but what became of it I cannot positively state."

Plaintiff testified that on receipt of said check or draft and
voucher he sent the same to the Montana National Bank for
collection, to be credited on his account when paid; that after-
wards plaintiff had a conversation with defendant Phelps, who
was then cashier of said bank, in which conversation plaintiff
asked defendant about giving him credit for said $90.30; that
defendant replied that said draft "had reached the bank, and
would be credited in due time."

Plaintiff further testified that in 1889 he called on Isaac and
Nellie Corson "for the express purpose of seeing Mrs. Corson
about this land and mortgage, and in talking it over the $90.30
was mentioned, and she asked me then if I had given them
credit for the $90.30, made the December before." Again
referring to the conversation in his testimony, plaintiff said:
"Nellie Corson asked me if I had allowed the payment of the
$90.30. I told her I had, upon this note." It appears to be
conceded that said check or draft was never collected by said
bank, but plaintiff allowed said payment on the note, and made
the indorsement thereof about the time the period of limitation
would have expired, except for the fact of said payment.

It is apparent from the facts shown that plaintiff was bound
to credit the Corson note with said payment of $90.30. If
plaintiff received a check or draft drawn in favor of Mrs.

Corson, by a third party, assigned over to him by proper indorsement, for collection and application on said note, and such check or draft was taken under those conditions and with the understanding that plaintiff would collect the same and give credit on said note, he was bound to allow the credit, unless, on failure of the obligor to make payment of the draft, plaintiff gave notice back to the indorser of the check or draft of its dishonor, in due time.   The fact of delivery of said check or draft, indorsed over to plaintiff for collection, and receiving no notice of protest for nonpayment thereof, warranted the makers of said note in charging plaintiff with the amount of the draft. These facts also warranted the Corsons in presuming that said draft had been collected by plaintiff, and he was bound to allow said payment on the note.   Moreover, according to the undisputed tesitmony, plaintiff was led by the statements of defendant Phelps, cashier of the Montana National Bank, to believe that said check or draft had reached the bank, and would be attended to, and credited to plaintiff; and plaintiff had in turn notified Mrs. Corson that the amount of said draft had been credited on the note in question.   There is no question that, as between the Corsons and plaintiff, he was bound to give said credit on the note; and it is clearly shown that, as to both maker and holder of the note, it was a payment, and the indorsement of it was therefore properly made.   There seemed to be no dispute that said transaction took place long before the expiration of the period of limitation.   The fact that the Corsons afterwards conveyed said land to defendant, and that he, with knowledge, as the evidence tends to show, that the Corsons had previously sold and conveyed said right of way to the Montana Central Railway for $90.30, and turned the draft over to plaintiff for that sum, succeeded afterwards in conveying said right of way to the railway company himself, and obtaining $90.30 therefor, while the other draft lay in the bank, of which Phelps was cashier, does not change the attitude which plaintiff occupied toward the Corsons in respect to their transaction above mentioned, by which plaintiff became liable to give credit on said note for the amount of said draft.

We think the court below was fully sustained by the evidence in finding that the alleged payment was made on said note

according to said indorsement, and hence that the demand was not barred by the Statute of Limitations.

It will therefore be ordered that the order overruling defendant's motion for a new trial, and the judgment, be affirmed.

*Affirmed.*

BLAKE, C. J., and DE WITT, J., concur.