Argued 24 October; decided 18 November; modified 16 December, 1901.

## HAWKINS *v.* DONNERBERG.

[66 Pac. 691, 908.]

INSTALLMENT STOCK SUBSCRIPTIONS—WHEN PAYABLE.

1. Subscriptions for corporate stock are payable as the directors may call for them, or as the by-laws may provide, and the statute of limitations commences to run against the liability of the subscriber accordingly; thus, where the by-laws make the stock payable in monthly installments, the statute runs against each installment from the time it was payable, without any call or action by the corporation or the directors or officers.

PLEADING—LIMITATION OF ACTION—DEMURRABILITY OF COMPLAINT.

2. An allegation in a complaint in an action to recover unpaid subscriptions to capital stock of a corporation that there remained due on such subscriptions a stated amount, which was smaller than that for which defendant stockholders were originally liable, is an allegation that payments had been made, but not as to the time of such payments, so that the complaint was not demurrable on the ground that the right of recovery was barred by the statute of limitations; but under Hill's Ann. Laws, §§ 3, 67, requiring the objection that the action was not commenced within the time limited by statute to be taken by answer, unless such fact appears on the face of the complaint, that defense was available only by answer.

UNPAID SUBSCRIPTIONS—LIMITATION OF ACTION.

3. Creditors of a corporation cannot enforce the liability of stockholders for unpaid subscriptions to capital stock after the corporation's right to collect such subscriptions has become barred by the statute of limitations.

LIMITATION—EFFECT OF APPEARANCE—RUNNING OF STATUTE.

4. A voluntary appearance of a defendant is equivalent to the commencement of an action in its effect on the running of the statute of limitations.

From Multnomah:   JOHN B. CLELAND, Judge.

40 OR.—7.

Suit by D. R. Hawkins against August Donnerberg and numerous others to enforce an alleged liability for certain subscriptions to the stock of the Citizens' Real Estate Investment Co.  Plaintiff had a decree and sundry defendants appealed.                                    REVERSED.

For appellant L. G. Clarke, there was a brief over the name of *Williams, Wood & Linthicum,* with an oral argument by *Mr. Geo. H. Williams.*

For appellants, Stubbs & Lawrence, there was a brief over the name of *Cake & Cake,* with an oral argument by *Mr. Harry M. Cake.*

For the other appellants there was a brief over the name of *Chamberlain, Thomas & Kraemer,* with an oral argument by *Mr. Warren E. Thomas.*

MR. JUSTICE MOORE delivered the opinion of the court.

This is a suit by a judgment creditor of an insolvent corporation to recover from certain of its stockholders the sum alleged to be due from each, respectively, on account of stock subscription.  The facts are that the Citizens' Real Estate & Investment Company, having been duly incorporated under the laws of the State of Oregon with a capital stock of $500,000, divided into five thousand shares of the par value of $100 each, adopted by-laws containing the following provision : "The stock of this corporation shall be paid for in monthly installments of five per cent. upon the par value thereof;" that on September 19, 1891, L. L. Hawkins loaned said corporation the sum of $6,000, for which it executed to him its promissory note, payable on demand, with interest at the rate of ten per cent. per annum; that on February 21, 1894, E. A. King loaned it $3,500, and took its note for that sum, payable in ninety days, with like interest; that these notes were assigned to plaintiff, who, on November 10, 1898, secured a judgment against said corporation for the sum of $11,875, upon

which was collected $4,491.25 and $1,986.87 on December 27, 1898, and July 21, 1899, respectively, and that said corporation is now insolvent. The complaint alleges that the defendants subscribed for stock of said corporation, and stipulated in their agreement to pay monthly therefor the sum of $5 per share, until the par value thereof was fully paid; that they became the owners and holders of said stock on or before the date set opposite their respective names, upon which there is now due and unpaid, not including interest, as follows, to wit: "Donnerberg & Co., July 11, 1891, 6 shares, $120.00." Then follow like statements in respect to the other defendants. A demurrer to the complaint on the ground that the suit had not been commenced within the time limited therefor having been overruled, each defendant averred in his answer "that more than six years have elapsed since the cause of suit alleged in the complaint accrued against these defendants, and the said suit is barred by the statute of limitations of the State of Oregon." A trial being had resulted in a decree for plaintiff, and defendants appeal.

1. It is contended by defendants' counsel that the right of a creditor of an insolvent corporation to subject its unpaid stock subscription to the satisfaction of his demands is limited to the rights of the corporation, and, as the subscriptions to the capital stock of the Citizens' Real Estate & Investment Company were payable in monthly installments, the statute of limitations had run against it, and hence the court erred in decreeing a recovery of any sum. The plaintiffs' counsel maintain, however, that a stockholder who has not paid his subscription occupies towards the creditors of a corporation the relation of guaranty, in which he undertakes, to the extent of his unpaid subscription, to pay the indebtedness of the corporation if it should become insolvent, and, this being so, his liability does not become absolute, so that the statute of limitations is set in motion, until the contingency occurs upon the happening of which his undertaking of indemnity is predicated; and if it be assumed, though denied, that the defense relied upon bars plaintiffs' right of suit, the expiration of the

period of the statute of limitations is manifest from an inspection of the complaint, and hence the immunity invoked is available only by demurrer, but the defendants, having answered over after their demurrer was overruled, thereby waived the privilege conferred by the statute. It will be remembered that the by-laws of the corporation provided that its stock should be paid for in monthly installments of five per cent. upon the par value thereof, and that the defendants stipulated in their subscription agreement to pay $5 per month for each share of the stock negotiated for. The terms imposed by the by-laws and prescribed by the agreement required the defendants to pay the face value of the stock subscribed for in twenty months; so that, if the statute of limitations can be invoked in their favor at all, it began to run against the monthly installments as they severally matured.

2. The statute provides that a defendant may demur to the complaint within the time required by law to appear and answer, when it appears upon the face thereof that the action has not been commenced within the time limited thereby: Hill's Ann. Laws, § 67. But if not apparent from an inspection of the complaint that the remedy is barred, the objection can only be taken by answer: Hill's Ann. Laws, § 3; *Spaur* v. *McBee,* 19 Or. 76 (23 Pac. 818); *Davis v. Davis,* 20 Or. 78 (25 Pac. 140). It will be remembered that the complaint avers that the defendants became the owners and holders of the number of shares of said stock on or before the dates set opposite their respective names, upon which there was then due and unpaid, not including interest, as follows: "Donnerberg & Co., July 11, 1891, 6 shares, $120," etc. Adding twentw months to the time when the defendants respectively subscribed for their shares of stock as the limit of time within which they agreed to pay therefor, and computing the time from such extended dates, more than six years had elapsed before this suit was instituted, and therefore the question to be considered is whether the complaint discloses that any payments were made by either of said defendants on account of their stock subscriptions within that period. It having been

alleged that Donnerberg & Co. subscribed for six shares of stock, upon which there was due and unpaid $120, and the complaint having disclosed that this stock was of the par value of $600, it is fairly inferable from the averments of the complaint that these parties had paid on account of their subscription the sum of $480. It does not appear, however, when such payment was made, or upon what installments of the debt created by the subscription agreement it was applied. If paid, however, upon each of the installments, it would necessarily interrupt the running of the statute of limitations: *Bartel* v. *Mathias,* 19 Or. 482 (24 Pac. 918). But, the complaint having failed to disclose facts upon its face which might toll the plaintiff's remedy, the issue of the bar could not be tendered by a demurrer predicated upon the statutory ground that the suit had not been commenced within the time limited therefor, and hence the objection upon that basis could only be taken by answer.

As opposed to this view, plaintiffs' counsel call our attention to 13 Ency. Pl. & Pr. 206, where the editors of that valuable work say: "Averments of payments may avoid the bar of the statute and prevent the bill or petition from being demurrable, but such allegations must be certain;" citing in support of the text the case of *Murphy* v. *Phelps,* 12 Mont. 531 (31 Pac. 64), in which it was held that a complaint in an action on a note appearing on its face to be barred by limitation, which alleges the indorsement on the note of the receipt of a certain sum, without a direct averment that the maker had paid any sum thereon, is bad on demurrer. In that case the complaint purported to set out a copy of the note sued on, and alleged that the same was indorsed, "December 30, 1888, received $90.30." It was also averred in another part of the complaint that "said note of $558.26, less the indorsement thereon of $90.30, is now due and unpaid." Mr. Justice HARWOOD, in deciding the case, says: "A statement in a complaint that an indorsement of the receipt of a certain sum appears on the promissory note sued on is not an averment that the obligor has paid any sum thereof. The indorsement could be placed

thereon without payment, and the statement in the complaint that the note is indorsed, 'December 30, 1888, received $90.30,' could be made in truth, although the maker of the note had paid nothing whatever thereon. Neither is the allegation of the sixth paragraph of the complaint that 'said note, less the indorsement thereon of $90.30, is now due and unpaid,' an averment that said sum was paid on said note, it might be truly alleged that the amount of the note was due, less the amount of said indorsement, when in fact the whole amount of the note was due and unpaid, including the sum stated as indorsed thereon. When the vital question is whether the claim is or is not barred by the statute of limitations, and the determination of such question depends upon the fact of the payment, such uncertain allegations as to that fact are insufficient. Therefore, if defendant had rested on his demurrer, we should be constrained to hold the complaint defective in thus failing to state facts sufficient to constitute a cause of action.''

In the case at bar the allegation in the complaint that each defendant, on or before the date stated, subscribed for and became the owner and holder of a certain number of shares of said capital stock, upon which there is due and unpaid a stated sum, which is less than the par value of the stock, is equivalent to an averment of payment of the difference, the only uncertainty being in respect to the time when such payment was made. The complaint does not disclose the time, and, since a payment removes the bar of the statute by fixing a new period from which it begins to run, the certainty of that date as a basis of computation ought to be apparent on the face of the complaint to render it vulnerable to a demurrer on the ground that the suit has not been commenced within the time prescribed therefor. In the case relied upon the date of the indorsement is certain, but whether any payment was made is quite problematical. It will be observed from the language quoted that the court does not intimate that the bar of the statute could be interposed by a demurrer, but that, if the defendant had relied upon the demurrer, the court would have been constrained to hold that the complaint did not state facts

sufficient to constitute a cause of action. The rule there announced is not applicable in this state, in which it is settled that, if the bar of the statute is not apparent from an inspection of the complaint, the objection that the action has not been commenced within the time prescribed by law can only be taken by answer, and, if not so raised, it is waived; which is not the case where the complaint does not state facts sufficient to constitute a cause of action: Hill's Ann. Laws, § 71; *Wyatt* v. *Henderson,* 31 Or. 48 (48 Pac. 790); *Willits* v. *Walter,* 32 Or. 411 (52 Pac. 24); *Kimball* v. *Redfield,* 33 Or. 292 (54 Pac. 216). Therefore, to render a complaint demurrable on the ground that the suit or action has not been commenced within the time prescribed, the allegation of payment necessary to remove the bar must be direct and certain, and not deducible from inference or presumption; and hence the objection that the suit had not been so commenced could only be taken, as it was, by answer.

3. This brings us to a consideration of the question whether the defendants can invoke the statute of limitations to defeat the creditor's remedy in his attempt to collect their unpaid stock subscriptions. Such subscriptions constitute a part of the assets of a corporation, and help to form the basis of its credit, and, when collected, the fund so raised is to be used in the transaction of its legitimate business and in the payment of its debts: *Ladd* v. *Cartwright,* 7 Or. 329; *Brundage* v. *Monumental, etc. Min. Co.* 12 Or. 322 (7 Pac. 314). The stockholder who enters into a contract with the corporation whereby he secures certain shares of its capital stock in pursuance of his agreement to pay therefor either within a definitely fixed time or upon the happening of a contingency, creates no privity of contract between himself and a creditor of the corporation, and he is not liable to the latter, except indirectly, through the corporation, and then only to the extent of his unpaid subscription: Const. Art. XI, § 3; *Hodges* v. *Silver Hill Min. Co.* 9 Or. 200; *Aldrich* v. *Anchor Coal Co.* 24 Or. 32 (32 Pac. 756, 41 Am. St. Rep. 831). Subscriptions for the purchase upon credit of shares of stock of a corporation, in

which no time of payment is specifically stated, is tantamount
to an agreement to pay therefor in such installments and at
such times as may be required by the directors of the corpora-
tion: *Hightower* v. *Thornton,* 8 Ga. 486 (52 Am. Dec. 412).
In such case the liability of the stockholder is conditional, and
does not become absolute until an assessment is made by the
directors, in pursuance of which he is called upon to pay the
whole or a part of his subscription: *Glenn* v. *Priest,* (C. C.)
48 Fed. 19; *Macon, etc. Ry. Co.* v. *Vason,* 52 Ga. 326; *Cherry*
v. *Lamar,* 58 Ga. 541; *Glenn* v. *Williams,* 60 Md. 93; *Haw-
kins* v. *Glenn,* 131 U. S. 319 (9 Sup. Ct. 739); *Glenn* v. *Lig-
gett,* 135 U. S. 533 (10 Sup. Ct. 867). If the directors of a
corporation neglect to make such call, a creditor, upon the in-
solvency of the corporation, may proceed in .equity to collect
from the subscribers the sums due upon their subscription:
*Glenn* v. *Semple,* 80 Ala. 159 (60 Am. Rep. 92). In *Ogilvie*
v. *Knov Ins. Co.* 63 U. S. (22 How.) 380, Mr. Justice GRIER, in
speaking of the relation of the defaulting subscribers of an
insolvent corporation, and of the character and effect of a suit
in equity by the creditors to collect their subscription, says:
''As stockholders who have not paid in the whole amount of
the stock subscribed and owned by them, they stand in the
relation of debtors to the corporation for the several amounts
due by each of them. As to them, this bill is in the nature of
an attachment, in which they are called on to answer as gar-
nishees of the principal debtor.'' ''A creditor's bill,'' says
Mr. Justice STRONG in *Hatch* v. *Dana,* 101 U. S. 205, ''merely
subrogates the creditor to the place of the debtor, and gar-
nishes the debt due to the indebted corporation.''

In *Powell* v. *Oregonian Ry. Co.* (C. C.) 38 Fed. 187 (3
L. R. A. 201), DEADY, J., speaking upon this subject, says:
''In effect, the plaintiff is thereby subrogated to the right of
the corporation to demand and have of and from the defend-
ant, as the holder of its unpaid stock, the balance due thereon,
or sufficient thereof to satisfy his demand.'' If a creditor
of an insolvent corporation, by instituting a suit against
its stockholders to subject their unpaid subscriptions to the

satisfaction of his demand, is therby subrogated to the rights of the corporation in respect to its stockholders, it follows that the creditor can secure no greater right by pursuing such a method than his debtor possessed; and hence, if the statute of limitations precludes the corporation from recovering the unpaid subscription from its subscriber, the creditor's remedy against him is also barred, unless some trust attaches to the debt in the hands of a stockholder, which precludes him from interposing such a defense. In *Wood* v. *Dummer,* 3 Mason, 308 (Fed. Cas. No. 17,944), the capital stock of an incorporated bank having been divided among its stockholders, thereby depriving it of assets necessary to meet the payment of its outstanding notes, it was held that such stock constituted a trust fund for the payment of the bank's obligation, which might be followed into the hands of its stockholders. The conclusion reached by Mr. Justice Story in that case, instead of being put upon the theory of a trust attaching to the assets of a corporation for the benefit of its creditors, might have been safely predicated upon the principle that a debtor. must be just before he is generous; that is, that he must pay his debts before he can be permitted to make a voluntary distribution of his property. And this rule applies as well to an individual as to a corporation: *Childs* v. *N. B. Carlstein Co.* (C. C.) 76 Fed. 86. In *Fogg* v. *Blair,* 133 U. S. 534 (10 Sup. Ct. 338), Mr. Justice Field, in commenting upon the theory that a corporation holds its property in trust for the payment of its debts, says: "That doctrine only means that the property must first be appropriated to the payment of the debts of the company before any portion of it can be distributed to the stockholders. It does not mean that the property is so affected by the indebtedness of the company that it cannot be sold, transferred, or mortgaged to *bona fide* purchasers for a valuable consideration, except subject to the liability of being appropriated to pay that indebtedness. Such a doctrine has no existence." When a debtor has unlawfully disposed of his property to the injury of his creditors, the rule is quite uniform that if it, or the fund arising therefrom, can be identified, a

court of equity will subject it to the satisfaction of their just demands. But the right of creditors in such cases is predicated upon the fraud which superinduced the sequestration, and not upon a trust. The doctrine announced in *Wood* v. *Dummer,* 3 Mason, 308(Fed. Cas. No. 17,944), has been applied in suits in equity by creditors of insolvent corporations to recover from stockholders their unpaid stock subscriptions, and it has been held that the sums due from them constituted a trust fund, which should be restored: *Baker* v. *Atlas Bank,* 9 Metc. (Mass.) 182; *Payne* v. *Bullard,* 23 Miss. 88 (55 Am. Dec. 74); *McGinnis* v. *Barnes,* 23 Mo. App. 413; *Mumma* v. *Potomac Co.* 33 U. S. (8 Pet.) 281; *Sawyer* v. *Hoag,* 84 U. S. (17 Wall.), 610.

In the cases to which attention has been called, and in many others that might be cited to the same effect, no fraud appeared, and the right of a court of equity to recover the subscriptions might have been put upon the principle of marshaling assets; for, no definite time having been prescribed for the payment of the stock subscription due the insolvent corporation, the stock was payable in such installments and at such times as required by the directors, which rendered the subscriptions equivalent to an agreement on the part of the stockholders to pay on demand; and hence the statute of limitations did not begin to run in favor of the stockholders until a call was made upon them to pay the assessment. The corporation's cause of action, therefore, did not accrue until such demand was made, and the creditor, by bringing his suit against the stockholder to recover his unpaid subscription, in effect garnished the sum due from the latter to the corporation, and applied it, when collected, to the satisfaction of his demand. In *South Carolina Mfg. Co.* v. *Bank of State,* 6 Rich. Eq. 227, the trust fund theory, as applied to a case similar to that under consideration, is criticised, Chancellor DUNKIN saying: "It appears to the court a misapprehension to suppose that, as between the creditors of a corporation and a defaulting subscriber, any trust exists. The fiduciary relation may be between the creditors and the corporation, but the contract of the

subscriber to the stock is direct and single. No privity exists between him, as an individual, and any creditor of the corporation. He can only be reached by the creditor through the corporation; and this is the only equity of the creditor, to wit, to be subrogated, *pro hac vice* to the rights of the corporation. If the rights of the corporation are lost, or their remedy barred, the creditor has no equity to revive them. The statute of limitations is not an act of amnesty. It probably proceeds on the presumption that the debt has been paid, but that, from lapse of time, the evidence of payment has been lost or destroyed." In *Hospes* v. *Northwestern Car Co.* 48 Minn. 174 (50 N. W. 1117, 15 L. R. A. 470, 31 Am. St. Rep. 637), a suit having been instituted by a creditor of an insolvent corporation to recover from its stockholders the amount of their unpaid stock, it was held that a corporation does not hold its property in trust for its creditors, except in the sense that there can be no distribution of it among stockholders without provision being first made for the payment of the corporate debts. Mr. Justice MITCHELL, speaking for the court, in rendering the decision, says: "Corporate property is not held in trust, in any proper sense of the term. A trust implies two estates or interests,—one equitable and one legal; one person, as trustee, holding the legal title, while another, as *cestui que trust*, has the beneficial interest. Absolute control and power of disposition are inconsistent with the idea of a trust. The capital of a corporation is its property. It has the whole beneficial interest in it, as well as the legal title. It may use the income and profits of it, and sell and dispose of it, the same as a natural person. It is a trustee for its creditors in the same sense and to the same extent as a natural person, but no further." To the same effect, see *Worthen* v. *Griffith,* 59 Ark. 562 (28 S. W. 286, 43 Am. St. Rep. 50;) *Childs* v. *N..B. Carlstein Co.* 76 Fed. 86; *O'Bear Jewelry Co.* v. *Volfer,* 106 Ala. 205 (28 L. R. A. 707, 17 South. 525, 54 Am. St. Rep: 31); *Bank of Montreal* v. *Potts Salt & L. Co.* 90 Mich. 345 (51 N. W. 512); *Corey* v. *Wadsworth,* 118 Ala. 488 (25 South. 503); *Graham* v. *La Crosse & M. R. Co.* 102 U. S. 148; *Hollins* v.

*Brierfield C. & Iron Co.* 150 U. S. 371 (14 Sup. Ct. 127).   The
decisions here adverted to are to the effect that no trust at-
taches in the hands of a stockholder to the unpaid stock sub-
scription of an insolvent corporation, from which it follows
that a creditor who, in equity, seeks to subject such credits of
his debtor to the satisfaction of his demand, takes no greater
interest therein than his debtor possessed; and, this being so,
the statute of limitations necessarily began to run in favor of
the defendants when the corporation's cause of action matured
against them.

The by-laws and the subscription agreement specified that
the capital stock should be paid for at the rate of $5 per month
per share, or in twenty months.   The subscribers having thus
agreed to pay for this stock at a definite time, no assessment or
call was required on the part of the corporation: *Hawkins* v.
*Citizens' Invest. Co.* 38 Or. 544 (14 Am. & Eng. Corp. Cas. N.
S. 81, 64 Pac. 320).   In *Baltimore Turnpike Co.* v. *Barnes,*
6 Har. & J. 57, which was an action by a corporation against
the stockholders to recover an unpaid subscription, which, by
the terms of the charter, matured in installments, it was held
that the statute of limitations began to run against them as
they severally matured.   The court said:  ''The plaintiffs had
a right to demand from the defendant the amount of each in-
stallment when it became due, and limitation attached at that
time.   They were, then, barred by the pleas of the defendant
as to the first installments, because more than three years had
elapsed from the time they were demandable to the institution
of the suit.''   In *Brown* v. *Union Ins. Co.* 3 La. Ann. 177, it
was held that a creditor of an insolvent corporation could not
recover from a stockholder when it appeared that more than
ten years had elapsed since the maturity of the last installment
due on the stock before the institution of the proceeding.   In
*Stark* v. *Burke,* 9 La. Ann. 341, the court, in discussing a sim-
ilar question, said:  ''We entertain no doubt that the plea
would be tenable if the original relations between the corpora-
tion and its stockholders had subsisted.   As soon as the debt
matured, it was an obligation which the corporation had a

right to enforce by a suit, and the prescription of ten years began to run against the corporation, the creditor of the debt due.'' In *Phillips* v. *Therasson,* 11 Hun, 141, a statute having provided that all stockholders were liable to an assessment call to the amount of stock held by them respectively for all debts of the corporation until the capital stock was paid up in full, and declared a corporation dissolved if such stock was not paid in two years from its incorporation, it was held that an action to enforce the liability thereby created must be brought before the expiration of six years from the termination of the two years allowed for paying the capital stock, or it would be barred by the statute of limitations.  If the several defendants had executed to the Citizens' Real Estate & Investment Company twenty promissory notes, each for one twentieth of the face value of the stock subscribed for, and consecutively payable in from one to twenty months, respectively, the statute of limitations would undoubtedly begin to run against the corporation upon the maturity of each of said notes; and, this being so, it cannot be supposed that the statute would not also be set in motion upon the maturity of the several installments, the terms and time of payment of which were prescribed by the by-laws and the subscription agreement, because they were evidenced in a less formal manner.

An examination of the transcript shows that more than six years had run against the corporation and in favor of the defendants, and hence the decree will be reversed, and one entered here in accordance with this opinion.        REVERSED.

Decided 16 December, 1901.

ON MOTION TO AMEND THE DECREE.

MR. JUSTICE MOORE delivered the opinion.

4.   This is a motion for the modification of a decree of this court.   The transcript shows that the complaint was filed September 21, 1899, but does not show that any summons was ever issued, served, or attempted to be served.   It does appear, however, that the defendants Stubbs & Lawrence, E. G. Clark,

and H. T. Hudson demurred to the complaint before six years from the maturity of the last installment of $5 due from each, respectively, had elapsed, though the decree was not rendered until after the expiration of that period. A defendant appears in an action or suit when he answers, demurs, or gives the plaintiff written notice of his appearance (Hill's Ann. Laws, § 530), and a voluntary appearance of the defendant shall be equivalent to personal service of the summons upon him: Hill's Ann. Laws. § 62. An action shall be deemed commenced as to each defendant when the complaint is filed and the summons served on him, or on a codefendant who is a joint contractor or otherwise united in interest with him: Hill's Ann. Laws, § 14. An attempt to commence an action shall be deemed equivalent to the commencement thereof, within the meaning of this title, when the complaint is filed and the summons delivered, with the intent that it shall be actually served, to the sheriff or other officer of the county in which the defendants, or one of them, usually or last resided. But such attempt shall be followed by the first publication of the summons or the service thereof within sixty days: Hill's Ann. Laws, § 15. Actions at law shall be commenced by filing a complaint with the clerk of the court, and the provisions of sections 14 and 15 shall only apply to this subject for the purpose of determining whether an action has been commenced within the time limited by this code: Hill's Ann. Laws, § 51. Construing these sections in *pari materia,* we think the suit was commenced, within the meaning of the statute, when said defendants made their voluntary appearance: *Sharp* v. *Maguire,* 19 Cal. 577; *Hancock* v. *Ritchie,* 11 Ind. 48. There was due, on October 4, 1893, from E. G. Clark and H. T. Hudson, respectively, the sum of $5, and on the next day, from Stubbs & Lawrence, the same sum, which constituted the last installment due from each on account of their respective subscriptions to the capital stock of the Citizens' Real Estate & Investment Company. The statute of limitations not having run against these installments at the time the defendants voluntarily appeared in this suit, plaintiff is entitled to recover

said sums from each, respectively, with interest from the maturity thereof, and the decree will be modified accordingly. As these several sums could probably have been collected from said defendants upon demand, without a suit therefor, they are awarded their costs and disbursements in this court, and in the court below.    DECREE MODIFIED.

Decided 25 November, 1901.