### William M. Oliver v. Silas W. Eaton.

Where it was shown that the mortgagee of a stock of goods left the same in the hands of the mortgagor, with power to sell and dispose of the same in the usual course of business, for cash or upon credit, and the mortgagor applied the proceeds of sales in the purchase of other goods to keep up the stock, in the support of himself, and in paying debts other than that secured by the mortgage, the mortgagee not asserting a right to the possession of the property, or the specific proceeds of the sales thereof, or preventing or prohibiting such sales:—*Held*, That it was not the duty of the court to instruct the jury that such mortgage must be held absolutely void as against creditors of the mortgagor, notwithstanding it was valid on its face, and was made without any actual fraudulent intent.

Where an instrument contains illegal provisions, or such as are not reconcilable, on any possible hypothesis, with an honest or legal intent, the law declares it void on its face, because no evidence can change its character.   But in all other cases where property is transferred with the alleged intent to hinder, delay, or defraud creditors, the question of fraudulent intent is one of fact for the jury, and the law can not determine for them that the showing, in a specified case, conclusively establishes such fraudulent intent.

*Heard July 9th.   Decided July 15th.*

Case reserved from Monroe Circuit.

Action of replevin to recover possession of a stock of goods.    Declaration in the usual form, to which the general issue was interposed by the defendant.    The case was tried at the February term of said court, 1859, the Hon. B. F. H. Witherell, circuit judge, presiding.    On the trial, it appeared that one John M. Oliver, a son of the plaintiff, had owned and carried on a drug store for several years in Monroe, Michigan, and that, to assist him, the plain-

tiff had given and loaned to him, and indorsed for him, to the amount of several thousand dollars: 'That, to secure his indebtedness to the plaintiff, said John M., on the twenty-eighth day of January, 1858, executed a chattel mortgage, which was duly filed in the city clerk's office, on the entire stock of goods, to the plaintiff, conditioned to pay him said indebtedness, and indemnify him against said indorsements; which said chattel mortgage contained the usual power to take possession of the goods, and sell them, in case of default, and to take possession of them in case the plaintiff should at any time deem the property unsafe in the hands of the mortgagor. The said John M. went on with the business, as his own, the same after the mortgage was given as before, making sales of the goods for cash, and on credit, in the usual course of trade, and applying the proceeds of the sales in buying other goods to keep up the stock, in the support of his family, and in paying debts owing by him, but applying no part thereof to the payment of the plaintiff's claims secured by the mortgage, or to pay the debts to collect which a levy was made on the goods, as hereinafter mentioned. When said mortgage was given, John M. Oliver owed debts to a considerable amount; two of which debts having been put in judgments in said court, and executions issued thereon, the defendant, who was sheriff of said county, in the month of August, 1858, levied on the entire stock of goods then in the store, by virtue of said executions, except a small amount purchased subsequent to the mortgage; whereupon, the goods were replevied, the plaintiff claiming them under said chattel mortgage. It further appeared in evidence that the plaintiff resided in Penn Yan, N. Y., but that from the time of giving the mortgage to the levy, he had in Monroe an agent, having full power from him to take possession of the goods at any time, and to do what might be necessary to protect his interests in the premises. The agent was well acquainted with John M. Oliver, owned, and rented to him, the store in which he did

business, himself did business in the same block, and was, often in the store of John M. Oliver, but he never took or claimed possession of the goods, or interfered with the business of the mortgagor, till the levy was made. The jury found a verdict for the plaintiff, upon which the defendant moved for a new trial, on the ground that the verdict was. against law and evidence.

Upon this motion, the following question was reserved, by the circuit judge for the opinion of this court: Whether the leaving of goods, covered by a chattel mortgage. in the hands of a mortgagor, by a mortgagee, with power to sell and dispose of the same in the usual course of of trade, for cash or on credit, the mortgagor applying the proceeds of sales in the purchase of other goods to keep. up the stock, and in the support of his family, and in paying his debts other than those secured by the mortgage, the mortgagee not asserting a right to the possession of the property, or the specific proceeds of sales thereof, or forbidding or preventing such sales, renders the mortgage null and void as against the creditors of the mortgagor, independent of the question whether there was any actual intent on the part of the mortgagor or mortgagee, or both, to defraud the creditors of the mortgagor, by means of the mortgage, or by means of such transactions subsequent to its being given?

*Holbrook & Bishop*, and *C. I. Walker*, for defendant.

1. The question of *good or bad intent* is excluded from the question, as reserved, so that the provisions of the statute on that point do not apply.—*Comp. L.* §§ 3198, 3201.

While the statute declares certain conveyances and transfers of chattels null and void, it by no means makes all others valid, or takes from the court the power and duty of declaring others fraudulent and void as a matter of law.— *Comp. L.* §§ 3188, 3191; *Wood v. Lowry*, 17 *Wend.* 495; *Otis v. Sill*, 8 *Barb.* 109.

2. The real character of the transaction in question was that it was a "trust for the use of the person making the same," and it is therefore declared void by the statute.— *Comp. L.* § 3182.

3. As a matter of law, the chattel mortgage was void as against the creditors of the mortgagor.—2 *Wend.* 596; 17 *Wend.* 492; 4 *Yerg.* 541; 3 *Metc.* 117; 13 *Barb.* 380; 386; 5 *Seld.* 213; 4 *Comst.* 580; 3 *Kern.* 577. If the mortgagor could sell the goods to his customers, an execution creditor may take them by execution.—17 *Wend.* 495. The mortgagor was not even under obligation to account to the plaintiff for the proceeds of sales; nor did he; nor was he required so to do, or to pay them over to the plaintiff.—13 *Barb.* 380. The instrument was a mere cloud placed *over the title*, passing it on paper, but not passing it in fact.

*G. V. N. Lothrop*, for plaintiff:

It is settled by our courts, that a mortgage of chattels vests the general title in the mortgagee, and he is entitled to immediate possession, to hold until default, unless otherwise stipulated in the mortgage; and that without such stipulation, the possession of the mortgagor is the possession of the mortgagee for all the purposes of protecting the property.— *Tannahill v. Tuttle*, 3 *Mich.* 110; *Eggleston v. Mundy*, 4 *Mich.* 296. And see *Sweetzer v. Mead*, 5 *Mich.* 108.

If the mortgage has no *intrinsic* infirmity, then it is a question of fact whether it was made in good faith, and on a valuable consideration. In the absence of a change of possession, the statute raises a presumption of fraud; and the *onus* rests on the mortgagee to rebut this presumption And he proceeds to do this by showing the consideration, and any other circumstances which may tend to prove the absence of any intent to defraud. And whether this is made out is entirely a question for the jury. *Intent* is

necessarily *a fact*, an *actual* thing. The statute gives the creditor the advantage of a presumption as to its existence in certain cases. But if there be any evidence tending to rebut the presumption, the question *must* be submitted to the jury, and that question is necessarily the actual existence of fraudulent intent.—12 *Barb.* 530; 13 *Barb.* 326; 23 *Wend.* 653; 26 *Wend.* 511; 4 *Hill*, 271; 1 *N. Y.* 499; 4 *N. Y.* 582; 9 *N. Y.* 213; 13 *N. Y.* 583; 1 *Doug. Mich.* 523; 15 *Mass.* 244; 16 *Pick.* 34; 1 *R. I.* 511; 2 *N. H.* 13; 13 *N. H.* 302; 33 *N. H.* 435; 12 *Me.* 282; 20 *Me.* 408; 2 *Metc.* 258; 2 *Cush.* 294.

CAMPBELL J.:

The case reserved is upon a motion for a new trial, based upon the claim that the verdict of the jury was against law and evidence.

The precise form in which this question arose does not plainly appear. This should properly be set out in a case reserved on such a motion, as nothing but questions of law, and such as are fairly raised on the trial, or in the progress of the cause, can legally be entertained by us. The only way in which the exact point here presented could have arisen, must have been as the foundation of a hypothetical charge asked of the court, inasmuch as it appears from the facts, that if such a hypothesis was adopted by the jury, it must have been inferentially. The instrument on its face was an ordinary chattel mortgage, with no objectionable features.

The law point then is simply this: Whether it is the duty of the court to instruct a jury that an instrument like the one in question, valid on its face, and made without any actual fraudulent intent, must be held absolutely void, as against creditors, under the circumstances supposed; and that, if the jury find such circumstances, they have no right to render a verdict in favor of its validity.

The law, where an instrument contains illegal provisions,

and such as are not reconcilable, on any possible hypothesis, with an honest or legal intent, declares it void upon its face, because no evidence could change its character. The cases in which this absolute and unchangeable presumption arises, are not numerous. There are other cases in which, upon the face of the instrument, a statutory presumption arises which is only *prima facie* evidence of fraud. And there are still more cases in which the whole illegality charged must be made out by extrinsic evidence. In both of the classes last named, the jury must determine all the facts. Such is the case before us, and it is not disputed that the facts here must be submitted to the jury; but it is claimed that the intent derivable from those facts is a ques-tion of law, and may be deduced in opposition to the find-ing of an absence of actual wrong intent.

The statute declares that every conveyance or assignment of property "made with the intent to hinder, delay, or de-fraud creditors, shall be void as against the persons so hin-dered, delayed, or defrauded." And it further provides that ".The question of fraudulent intent, in all cases, arising un-der this, or either of the last two preceding chapters, shall be deemed a question of fact, and not of law."

It certainly does not strike one as an obvious conclusion from this language, that the fraudulent intent to be derived from any given or found state of facts, was intended to be made an inference of law. The question of *intent*, and not merely the facts from which it may be inferred, is declared to be a question for the jury. The statute must have some meaning, and it was undoubtedly introduced to create or settle a rule of law. No question ever arose in any court as to whose province it is to pass upon facts. But questions have often arisen as to whose right or duty it is to deduce legal conclusions from given circumstances. This question has been much mooted in reference to fraudulent convey-ances. The statute uses language very well calculated to settle this doubt, and it ought to be construed in such a manner as to carry out the intent appearing on its face.

In New York several decisions have been made, which held that the fraudulent intent might be inferred as a question of law from certain facts, mostly consisting of continued possession by the mortgagor, or other circumstances attending such possession or use. But in the Court of Errors, in *Smith v. Acker*, 23 *Wend.* 653, the whole doctrine was satisfactorily disposed of, and, although not always acquiesced in, it has never been overruled, and its reasoning has never been shaken. This case was recognized in *Jackson v. Dean*, 1 *Doug. Mich.* 519, as a correct exposition of the law, and the whole question of intent was declared to be a question of fact. This has always been recognized as law in this state, unless in the few cases where the conveyance is void on its face. And the Court of Appeals of New York, in the case of *Gardner v. McEwen*, decided a few days ago, upon facts quite as strong as those assumed in this case, and very similar—although intimating, in accordance with some of the decisions of that state, that an agreement to allow the mortgagor to buy and sell goods in the usual course of business might be regarded as fraudulent—held distinctly that the court could not, upon such facts, withdraw the question of fraudulent intent from the jury, or declare that intent to result from the agreement, as a question of law. Courts have differed upon the legality of such an agreement, but, if it is not a question of law, a jury is the proper body to determine the fraud, or absence of fraud, from the circumstances of each case.

It is quite proper for a court to call the attention of a jury to all the facts bearing upon the good faith of the transaction, but it was evidently the intention of the statute to abolish the arbitrary rules which different courts had laid down, whereby honest instruments had sometimes been annulled, and dishonest ones upheld. By leaving each case to the jury, each instrument is made to stand upon its own actual merits; which is much safer in questions of fraud; whose manifestations are infinitely various, than the adoption of fixed rules, which must fail to meet numerous cases.

We have purposely avoided discussing any of the circumstances of the case before us. We think the facts reserved do not raise any question of law which can be decided by the court under the statute referred to, and that the intent must be left to the jury. It should be certified to the court below that the question reserved should be answered in the negative.

The other Justices concurred.