HILLS and others *v.* STOCKWELL & DARRAGH FURNITURE CO.

*(Circuit Court, W. D. Michigan, S. D.* March 4, 1885.)

1. FRAUD ON CREDITORS—CHATTEL MORTGAGE—PREFERRING CREDITORS.
In Michigan an insolvent debtor has a legal right to secure one or more *bona fide* creditors in preference to others, where no fraud is intended; and the mere fact that a chattle mortgage given for that purpose operates incidentally to hinder and delay other creditors in collecting their debts does not affect the security.

2. SAME—FRAUDULENT INTENT—QUESTION OF FACT.
The Michigan statute declares that the question of fraudulent intent is one of fact and not of law.

3. SAME—RETENTION OF POSSESSION WITH POWER OF SALE.
Provisions in a chattel mortgage that the mortgagor shall continue in possession of the property, and continue sales thereof at wholesale and retail, with an omission of a stipulation to apply the proceeds of sales to pay the secured debts, do not make out constructive fraud or fraud in law.

4. SAME—CONVEYANCE WHEN VOID IN LAW.
When a court says the law declares a conveyance void for fraud, or imputes to it fraud, what is meant is that the law will not sanction a conveyance, against the claims of creditors, when its provisions are illegal or are not reconcilable with an honest purpose, and then declares it void upon its face because no evidence could change its character; as, in case of a deed made by a debtor for his own support or benefit, or for the benefit of those dependent upon him for support, or without consideration, and the like.

5. SAME—ATTACHMENT DISSOLVED.
Chattel mortgage executed by a manufacturing corporation to secure indorsers of its paper, most of whom were its directors, containing a provision that the mortgagor should retain possession of the property and sell it at wholesale and retail, construed, and *held* not fraudulent as matter of law, and ground for an attachment.

*Assumpsit.* Order *nisi* for the dissolution of an attachment.
*Smiley & Earle,* for plaintiffs.
*R. W. Butterfield,* for defendant.

WITHEY, J. On the twenty-second of December last the plaintiffs sued out a writ of attachment against the property of the defendant, based on an affidavit that the latter had disposed of its property with intent to defraud its creditors, and seized part of the personal property which, in August previous, the defendant had chattel mortgaged to Wilder D. Stevens, in trust to secure five persons, indorsers of its paper, aggregating about $87,000, and also to secure its employes for labor debts, due and to come due. The mortgage covered the entire stock in trade of the company, including lumber, furniture, and per-

sonal effects, and all additions and accretions.    It permitted the company to continue in possession and carry on its business, but restricted sales to such as should be made in the ordinary course of the wholesale and retail business of the company.    The company manufactured furniture.    The mortgagees' interest in the property was to be kept insured in not less than the amount of the insurance at the date of the instrument, but the company might reduce the insurance in proportion as the value of the property should be reduced from time to time.    All but one of the indorsers were stockholders and directors in the company.    The secretary and president are indorsers of part of the paper of the company secured by the mortgage, and executed the mortgage under the authority of a vote of both the stockholders and board of directors.

The instrument recites the date and amount of each piece of paper, when due, and the name of the indorser or indorsers; that the company is indebted to the persons in its employ, and desires that they shall continue in its employment, and desires to secure to them the payment of sums due and to come due to them, and also desires that the said indorsers of its paper shall continue to indorse renewals of its paper up to at least the first day of January, 1885, which they are willing to do if secured.    The company agrees "to take up and pay all such paper subsequently coming due and not renewed; to pay all renewals and all such paper now past due on or before January 1, 1885, unless the same can be renewed, and in that case to pay the renewal or renewals thereof, and to save harmless the said indorsers on such paper from all loss and damage by reason of such indorsements."    In case the company does not pay according to the terms of the instrument, and keep harmless the indorsers, the mortgagee may take possession of and sell the property at private or public sale.

The plaintiffs, by an order *nisi*, were ordered to show cause why the writ of attachment should not be dissolved and the property discharged.    It is incumbent on them to make out that the mortgage was executed with intent to hinder, delay, or defraud creditors.    The proofs show (in addition to what has already been stated) that at the date of the instrument the defendant corporation was unable to pay its debts as they matured, and had asked the plaintiffs to extend the debt on which this suit is brought.    It had received notice from the bank where it transacted its principal banking business, and which held $30,000 of the company's paper, that ten or more thousand dollars, soon to mature, would not be renewed, and the indorsers on that paper had also been notified of such intention on the part of the bank. The company owed more than $12,000 of unsecured debts.    One of the officers of the company, produced by the plaintiff, testified in substance that there were three immediate reasons for giving the mortgage: (1) The company had got behind with the men in its employ and they were getting uneasy; (2) the only indorser of the compa-

v.23₁,no.9—28

ny's paper not a director, and two of the directors who were indorsers, demanded security if they continued to indorse; (3) defendant's bank had given notice to it and to the indorsers that certain paper would not be renewed; but it was believed, notwithstanding, that the bank would be satisfied if all the paper it held against the company was secured, and that was the purpose in giving the mortgage. "We thought," says the witness, "we could then, aided by the time thus obtained, go on and pay what we owed. We had no idea but what our debts would be paid. Our general indebtedness had, within a short time, been largely changed to the banks by borrowing of them on indorsed paper. We had been accustomed to take our drafts to our bank and have them credited up to us. About this time the bank refused to do this. We had thirty or forty thousand dollars of accounts, half of which were collectible. There is no question made as to the *bona fides* of the indebtedness intended to be secured by the mortgage."

It is insisted by the plaintiffs that the mortgage is fraudulent in fact, and fraudulent upon its face as against the general creditors of the defendant. I am unable from the evidence before me to discover any intention on the part of the officers of the corporation to hinder, delay, or defraud creditors. The indebtedness existed and was *bona fide;* the defendant was unable to pay promptly its debts, due and to fall due, and the indorsers of its paper demanded security before renewing their indorsements. It does not affect the question if the company could never pay its debts in full; for the legal right of an insolvent debtor to secure one or more creditors in preference to others, where no fraud is intended, is settled in Michigan by many decisions. The mere fact that the security operates incidentally to hinder and delay other creditors in collecting their debts does not affect the security. Both facts may and should be considered in determining whether fraud was intended.

The statutes of Michigan relating to chattel mortgages and to conveyances fraudulent against creditors, as construed by the supreme court of the state, constitute rules of property, binding as well upon the national as upon the state courts. This mortgage did not hinder or delay creditors, within the meaning of the statute, unless it was made with a fraudulent intent; and if it was not made with a fraudulent intent, its execution was no ground for an attachment of the defendant's property. The statute declares that the question of fraudulent intent shall be a question of fact, and not of law, and I find there was in fact no fraudulent intent. The mortgage was given to secure indorsers of *bona fide* indebtedness of the company, and of persons to whom *bona fide* debts were owing, and nothing in all that was done indicates a purpose inconsistent with honesty and fair dealing on the part of the officers of the corporation, or any of the beneficiaries under the mortgage. The corporation contemplated continuing in business through the assistance the mortgage would incident-

ally afford, enabling it to obtain renewals of its paper, and giving it time through such credit to convert its stock and work out.    It does not matter whether such hope was justified by the circumstances; if such was the purpose, and nothing more, a fraudulent intent can not be predicated of the facts.

But the principal contention by the plaintiffs is that the instrument is constructively or presumptively fraudulent, for two reasons: (1) That it neither fixes nor contemplates a time certain within which the indorsed indebtedness of the corporation is to come due and payable; (2) that the mortgage is executed by the president and secretary of the company, who on the face of the instrument are beneficiaries of its provisions.    It is also true that other of the beneficiaries are directors in the corporation.    There is no agreement to renew any part of the indorsed paper, but in case any of it should be renewed, then such renewals are to be paid.

The mortgage recites that the company desires to have the indorsers renew paper, and that they were willing to do so if security was given for their indorsements.    Legally, therefore, whenever the holder of any of the paper should refuse to renew, or whenever any indorser should refuse, that particular paper would be due and payable.    This was part of the arrangement to enable the company to avoid suspension, and to enable it to go on manufacturing and selling its goods.    I do not regard such an arrangement constructively fraudulent, but a fact to be considered, like any other fact, tending to show the intention of the parties in making the mortgage.    Even if its provisions do, incidentally, hinder or delay creditors, it does not follow that fraud was intended.    The provisions that show the mortgagor was to continue in possession of the property, and was to continue sales at wholesale and retail, together with the omission of a stipulation to apply the proceeds of sales to pay the secured debts, do not make out constructive fraud, or fraud in law; and it has been so ruled in this state.    They are to be considered as other facts and circumstances on the question of fraudulent intent.    The terms of the mortgage as to renewals, leaving it uncertain when the indebtedness was to be paid, are to be scrutinized, but, like the other provisions alluded to, constitute no conclusive evidence of a fraudulent intent.

Again, the fact that the officers who executed the mortgage, and the directors, are among the beneficiaries of its provisions, calls for the closest scrutiny, but, in my opinion, raises no conclusive presumption that there was an intent to hinder, delay, or defraud creditors. The law seldom imputes fraud in reference to a conveyance made under a statute which declares "the question of fraudulent intent, in all cases arising under this, or either of the last two preceding chapters, shall be deemed a question of fact and not of law."

I apprehend, when a court says the law declares a conveyance void for fraud, or imputes to it fraud, what is meant is that the law will not sanction a conveyance, against the claims of creditors, when its

provisions are illegal or are not reconcilable with an honest purpose, and then declares it void upon its face because no evidence could change its character; as, in case of a deed made by a debtor for his own support or benefit, or for the benefit of those dependent upon him for support, or without consideration, and the like. *Oliver* v. *Eaton*, 7 Mich. 108; *Bagg* v. *Jerome*, Id. 145. See, also, *Brett* v. *Carter*, 2 Low. 458; and *Hughes* v. *Cory*, 20 Iowa, 399.

The case of *Robinson* v. *Elliott*, 22 Wall. 513, is much relied on by the plaintiff's attorneys, and if that case had arisen in this state, the decision would seem to control this case on the question of the effect of leaving the mortgagor in possession of the property, and render the instrument void for fraud; but the chattel mortgage in that case was made in Indiana, and does not, therefore, control my judgment when passing upon a mortgage in Michigan, governed by its laws as uniformly interpreted by its courts. It was also there determined that a mortgage which by its terms permits or contemplates the indefinite prolonging of the debt secured by the mortgage, is void as against existing creditors. It is argued here that, as the Michigan supreme court has never passed upon that question, this court should follow the doctrine on that subject applied in *Robinson* v. *Elliott*. That case was decided on its own facts, or on the provisions of the mortgage under discussion therein, and under a statute of Indiana that had not been expounded by the supreme court of the state; but here is a mortgage with different provisions, and, under the decisions of this state, ought not to be decided by the reasons and conclusions expressed by Mr. Justice Davis in *Robinson* v. *Elliott*, upon either question ruled in that case. That was a suit in equity; this is an application to dissolve a writ of attachment by virtue of which the defendant's goods have been seized and are held on the charge that the defendant has disposed of its property with intent to defraud its creditors. Under this application to dissolve the attachment, the court has no power to decide anything more than whether this mortgage was made with a fraudulent intent, and discharge or sustain the seizure that has been made. A court of equity could decree so as to protect, not alone the plaintiffs, but all the creditors, including the directors who are indorsers, by a distribution of the proceeds *pro rata* to all the defendant's creditors. A court of equity will preserve legal rights, but it will not permit them to prevail to the exclusion of equitable rights and considerations. If the plaintiffs had a judgment, and should file a bill in equity to restrain the mortgagee taking possession of, selling, and appropriating the property, because the officers and directors have made themselves beneficiaries under the mortgage, to the exclusion of other creditors, there are cases deciding that in such suit the officers and directors would not be permitted to take undue advantage of their position by securing themselves to the exclusion of other creditors; but, even then, the beneficiaries under the mortgage, not officers or stockholders, might be entitled to the bene-

fit of the mortgage as a security. *Bradley* v. *Farwell*, 1 Holmes, 433; *Coons* v. *Tome*, 9 Fed. Rep. 532; *Gas-light Co.* v. *Terrell*, L. R. 10 Eq. 168. Among cases that hold somewhat different views are *Stratton* v. *Allen*, 16 N. J. Eq. 232; *Whitwell* v. *Warner*, 20 Vt. 444; *Railroad Co.* v. *Claghorn*, 1 Speers, Eq. (S. C.) 561, 562. See Ang. & A. Corp. § 233; also *Buell* v. *Buckingham*, 16 Iowa, 234, 291.

But I am not called upon to decide, as in a court of equity, the effect of the mortgage upon the distribution of the defendant's property, and the rights as between the general creditors and the officers of the corporation as to the mortgaged property. The question before me is whether a creditor, who attaches property under a statute giving to him the right, upon making and annexing to the writ an affidavit that the defendant therein has disposed, or is about to dispose of, his property with intent to hinder, delay, or defraud his creditors, and being required to show cause why the attachment should not be dissolved, can maintain the seizure without showing fraud in fact, or, at least, that the necessary result is fraud, shown by the production of the mortgage and which no evidence could change, in view of the statute making the question of fraudulent intent one of fact and not of law.

The ultimate fact turns upon whether the directors, in directing the mortgage to be made to a person in trust to secure outside creditors, and at the same time indemnify themselves against indorsements for the company, under the circumstances and for the objects stated, must be held necessarily to have intended fraud. I cannot see that they did. It is not competent in this proceeding to predicate constructive fraud upon the mere fact that they availed themselves of their superior advantages to obtain indemnity against their indorsements.

I call attention to *La Belle Iron Works* v. *Hill*, 22 Fed. Rep. 195, wherein Mr. Justice Miller, in a trial involving the validity of a writ of attachment under the statute of Missouri providing that the plaintiff in any civil action may have an attachment "where the defendant has fraudulently conveyed or assigned his property or effects so as to hinder or delay his creditors," held that a deed of trust given by the defendants "did not hinder and delay creditors, within the meaning of the Missouri statute, unless it was made with a fraudulent intent, and that its execution was no ground for an attachment unless there was fraud in fact, and that fraud in law was not sufficient." He said to the jury: "If you believe that deed of trust to be an honest instrument,—if you believe it was made for an honest purpose, you will find for the defendants; but if you believe it to have been made for a dishonest purpose, you will find for the plaintiff."

The deed of trust was made to secure the payment of debts, but provided that none of the property conveyed should be sold within two years. There was a contemporaneous agreement that the trustee should conduct the business of defendants in the firm name, and

only such creditors as should sign the agreement were to share in proceeds of the sales of the personal property, but all were privileged to sign.   One of the defendants testified that the deed was made with the hope that the personal property would suffice for the payment of the firm debts, and they hoped to save the real estate.

The attachment of the property in question is dissolved.   The defendant has appeared and plead, which saves the suit in court for recovery at the proper time of the plaintiffs' damages upon their claim.