CHILDS et al. v. N. B. CARLSTEIN CO. et al.

(Circuit Court, E. D. Michigan, N. D.)

No. 3.

1. INSOLVENT CORPORATIONS—PREFERENCE TO OFFICERS.

The assets of a corporation do not constitute a trust fund for the benefit of its creditors in such a sense that any disposition thereof to secure an antecedent indebtedness in favor of one or more of its officers, though made while the corporation is still a going concern, and its officers still have hopes of continuing business, may be set aside at the instance of creditors.

2. EQUITY PLEADING.

An answer which is responsive to the bill, and denies its allegations, must be taken as true, in the absence of evidence contradictory thereof.

3. INSOLVENT CORPORATION—APPLICATION OF ASSETS.

The fact that one is president of a corporation is not ground for depriving him of the right to enforce securities which he holds for the payment of his just claims against the company.

4. CREDITORS' BILL.

A creditors' bill must be preceded by a judgment at law.

5. SAME.

A few creditors cannot bring a bill for an accounting and administration of the assets without stating that it is brought on behalf of themselves and all the rest of the creditors.

6. SAME—GARNISHMENT—EFFECT.

By the Michigan statutes, garnishment proceedings do not confer a lien upon the money or property in the hands of the garnishee, so as to entitle the plaintiffs therein to the same standing as judgment creditors in regard to the right to bring a creditors' bill.

7. CREDITORS' BILL—JURISDICTION OF EQUITY.

Since, under 3 How. Ann. St. Mich. § 8091, a creditor may, by a garnishment proceeding, reach property fraudulently conveyed by his debtor, the same relief cannot be obtained by a creditors' bill.

8. COLLATERAL SECURITY.

A creditor holding collaterals is not bound to apply them before enforcing his direct remedies against a debtor and his effects.

Bill by Henry B. Childs and others against the N. B. Carlstein Company and others.

Complainants are residents of Cleveland, and citizens of the state of Ohio, and co-partners in business at that place; and the defendant the N. B. Carlstein Company is a corporation organized and existing under the laws of the state of Michigan, having its principal office at Bay City, and, prior to the filing of the bill, was engaged in the business of selling, at wholesale and retail, dry goods, clothing, and other merchandise, at Bay City, and at the village of Standish, in Arenac county, Mich., having stores at said places. The defendant Miller was prior to December 28, 1894, a stockholder and president of said the N. B. Carlstein Company, and is a citizen of Michigan and resident of Bay City. All of the other defendants are citizens of Michigan and residents of Bay City, and with the exception of Frank S. Pratt, who is trustee in the mortgage executed by the Carlstein Company, hereinafter mentioned, are creditors of said company and beneficiaries under said mortgage. The claim of the complainants against the N. B. Carlstein Company is for merchandise sold and delivered by complainants since July 1, 1894, to the amount of about $3,684.27. For the recovery of this sum, complainants had commenced their suit at law in this court, and issued a writ of garnishment in aid of the same against Frank S. Pratt, trustee, William H. Miller, and the banks above named.

The bill recites that two of the complainants visited Bay City October 12th, and there had an interview with defendant Miller, president of the company, in which the latter stated that its credits had been too largely extended, and therefore the company would be obliged to have an extension of time for the payment of its debts to complainants; that it was solvent, and that none of its creditors would ever lose by it, and also that the company was considerably indebted to Miller, and other statements were then made, as the bill charges, for the purpose of inducing complainants to extend the time for the payment of their debt, and to obtain further goods on credit; and that, by these representations and statements, complainants had been diverted from demanding and obtaining the negotiable notes of the company, secured by the indorsement of Miller, which he refused to give, on the ground that he had never indorsed the paper of the company. Allegations are made upon information and belief of other matters which are put forward by complainants as the inducements upon which they acted in accepting unindorsed notes of the company, for the indebtedness then due, and for granting an extension on indebtedness of the company to complainants, which fell due December 1, 1894, and by which complainants were led to sell and deliver additional goods in November and December, 1894. The bill avers that October 12, 1894, the N. B. Carlstein Company was indebted to the Commercial Bank of Bay City, the Old Second National Bank, and the First National Bank of Bay City, defendants herein, for an amount exceeding $40,000, for the greater part of

which defendant Miller had become personally responsible to said banks as indorser, guarantor, or by giving his personal obligations in some other form; that said company was also indebted to the H. B. Claflin Company, of New York, to the amount of several thousand dollars, and to other parties, for goods sold and delivered, to the amount of at least $25,000, and that October 12, 1894, said N. B. Carlstein Company was insolvent, to the knowledge of defendant Miller, its president; that on the 28th of December, 1894, there was executed and delivered to defendant Pratt, as trustee, for the H. B. Claflin Company, the Commercial Bank of Bay City, the old Second National Bank of Bay City, the First National Bank of Bay City, and defendant Miller, a chattel mortgage to secure indebtedness amounting, in the aggregate, to $92,235.12, and covering all of the goods, mortgages, and other property of the N. B. Carlstein Company; that on the 29th day of December, 1894, said the N. B. Carlstein Company executed and delivered to defendant Miller another chattel mortgage upon its goods, merchandise, and personal property, to secure an alleged additional indebtedness to said Miller of $12,895.68; that said banks had, prior to the giving of said mortgage, collateral security for the indebtedness secured thereby, which was partly the property of the mortgagor, and the balance that of defendant Miller, who, the bill charges, is also responsible to each of said banks for the payment of said indebtedness to it as indorser, guarantor, or by reason of a personal obligation in some other form, and that the greater part of said indebtedness to said banks was incurred before July 1, 1894, and has been secured from its inception by Miller's personal undertakings; that the Pratt mortgage and that to Miller were executed by the mortgagor, by its vice president and its secretary; that said Miller fraudulently concocted the scheme to appropriate to his own benefit the assets of said the N. B. Carlstein Company, and for the purpose of giving that company a fictitious credit, and for that purpose procured the sale to the company, on credit of the greater portion of the goods, included in the mortgage; that defendant Pratt, the trustee in said mortgage, has taken possession of the mortgaged property at Bay City and Standish, and has been selling the goods at those places, and converting the same into cash; that Miller has taken concurrent possession with Pratt by virtue of the second mortgage, with the intent to sell the property in bulk, and to bid the same in at said sale, which is to be had subject to said first mortgage, the result of which will be that Miller will become the purchaser of the property for a nominal consideration, and that it is the purpose and intent of Miller and Pratt and of the N. B. Carlstein Company to use the proceeds of the sale of property made by Pratt for the purpose of paying such part of the indebtedness to the banks as is necessary to obtain a release of Miller's obligations and the collateral security by him given to said banks, and then for the payment of other secured indebtedness, the effect of which will be to absorb the assets of the mortgagor for the benefit of secured creditors; that on the 6th of February, 1895, complainants commenced an action at law against the N. B. Carlstein Company for the recovery of its indebtedness to them, in this court, and simultaneously instituted garnishment proceedings against the defendants in this cause, charging that each of them has in its hands, custody, or control the personal property of said the N. B. Carlstein Company, and making the other statutory allegations necessary to sustain such suits in garnishment, which, the bill claims, give the complainants the status of judgment creditors of the N. B. Carlstein Company. The prayer is that the court will decree the mortgages and the contracts and obligations of the N. B. Carlstein Company to Miller to be fraudulent and void as against complainants and the other unsecured creditors of the company; for an accounting of the amount due complainants, and marshaling of the assets of the Carlstein Company for their benefit; that the banks may be compelled to resort for payment of their claims to the collateral held by them, including the securities owned by Miller; and that the claims of Miller against said company may be postponed to complainants and those of the unsecured creditors of the company; and that the complainants' claim may be decreed to be a first lien upon the property of the Carlstein Company, except such as has been lawfully pledged as collateral before the issue and service of the writs of garnishment. A receiver is also prayed, and the court is asked to

enjoin Miller and Pratt from selling, disposing of, or in any manner interfering with the property covered by the mortgages, and from foreclosing the mortgages, and for other relief.

The bill does not waive an answer under oath. A temporary restraining order was granted, in pursuance of its prayer. Since then each of the defendants have filed their separate answer under oath, denying positively and unequivocally all of the allegations of fraud made in the bill, and all the material matters upon which the prayer for relief is predicated, and further averring that the mortgages mentioned in the bill and all the transactions had between the N. B. Carlstein Company and its co-defendants, the banks, and Miller, which the bill seeks to avoid, were founded upon full consideration, and made in good faith, to secure advances and liabilities of the mortgagor corporation, and were had and done in the exercise of the lawful rights of the parties.

Brooke & Spalding, for complainants.

T. F. Shepard, E. A. Cooley, C. L. Collins, and J. C. Weadock, for defendants.

SWAN, District Judge (after stating the facts). The answers of the defendants so fully repel the charges of fraud made by the bill that the only matters remaining for examination are the legal questions which govern the case. The obstacles to the maintenance of this bill are many and insuperable. Its scheme and theory are founded on two propositions, both of which must be established to sustain it. The first is that the assets of a corporation constitute a trust fund for the benefit of its creditors, of so sacred a nature that any disposition of those assets to secure an antecedent indebtedness in favor of one or more of its officers, even if made in the life of the corporation, and while it is still a going concern, although financially embarrassed, if the same results to the detriment of its general creditors, may at their instance be set aside as inequitable; and, second, that, for that purpose, simple contract creditors, who have begun garnishment proceedings against alleged fraudulent grantees of their debtor, have practically acquired the standing of judgment creditors, and may resort to a court of equity and obtain this redress. These two propositions are the foundations of complainants' case. Other questions are incidental and dependent.

The first contention is a misconception of the tenure by which a corporation holds its property and its control of the same. There is no difference between a corporation debtor and an individual debtor as to the power of disposition of their property, except as the corporation is restricted by its charter or by general rules of law.

As is said in the case of Graham v. Railroad Co., 102 U. S. 148, where a like question was involved to that here presented:

"A corporation is a distinct entity. Its affairs are necessarily managed by officers and agents, it is true; but, in law, it is as distinct a being as an individual is, and is entitled to hold property (if not contrary to its charter) as absolutely as an individual can hold it. Its authority is the same; its interest is the same; its position is the same. Its stockholders may prevent any malversation of funds or fraudulent disposal of property on their part. But that is done in the exercise of their corporate rights, not adverse to the corporate interests, but coincident with them. When a corporation becomes in-

solvent, it is so far civilly dead that its property may be administered as a trust fund for the benefit of its stockholders and creditors. A court of equity, at the instance of the proper parties, will then make those funds trust funds which in other circumstances are as much the absolute property of the corporation as any man's property is his."

Speaking of this case, which is characterized by Mr. Justice Bradley's clearness and accuracy of statement, Mr. Justice Brewer, in Hollins v. Iron Co., 150 U. S. 371, 387, 14 Sup. Ct. 129, says:

"All that it decides is that, when a court of equity does take into its possession the assets of an insolvent corporation, it will administer them upon the theory that they, in equity, belong to the creditors and stockholders, rather than to the corporation itself. In other words,—and that is the idea which underlies all these expressions in reference to 'trusts' in connection with the property of a corporation,—the corporation is an entity, distinct from its stockholders as from its creditors. Solvent, it holds its property as any individual holds his, free from the touch of a creditor who has acquired no lien; free, also, from the touch of a stockholder who, though equitably interested in, has no legal right to, the property. Becoming insolvent, the equitable interest of the stockholders in the property, together with their conditional liability to creditors, places the property in a condition of trust, first for the creditors, and then for the stockholders. * * * It is rather a trust in the administration of the assets after possession by a court of equity than a trust attaching to the property as such for the direct benefit of the creditor or stockholder."

The learned justice adds later in the opinion:

"That the cases negative the idea of any direct trust or lien attached to the property of the corporation in favor of its creditors, and, at the same time, are entirely consistent with those cases in which the assets of a corporation are spoken of as a 'trust fund,' using the term in the sense that we have said it was used. * * * The party may deal with a corporation in respect to its property in the same manner as with an individual owner, and with no greater danger of being held to have received into his possession property burdened with a trust or lien."

The same doctrine is also stated by Mr. Justice Gray in Railway Co. v. Ham, 114 U. S. 587, 5 Sup. Ct. 1084, with equal accuracy. He says:

"The property of a corporation is, doubtless, a trust fund for the payment of its debts, in the sense that when a corporation is lawfully dissolved and all its business wound up, or when it is insolvent, all its creditors are entitled in equity to have their debts paid out of the mortgaged property before any distribution thereof among the stockholders. It is also true in the case of a corporation as in that of a natural person that any conveyance of property of the debtor without authority of law, and in fraud of existing creditors, is void as against them."

This is also as emphatically stated by Mr. Justice Field in Fogg v. Blair, 133 U. S. 534, 541, 10 Sup. Ct. 338, 340. This enunciation of the rights and powers of corporate debtors is in accordance with the decision of the supreme court of Michigan in the case of Bank of Montreal v. J. E. Potts Salt & Lumber Co., 90 Mich. 345, 51 N. W. 512, in which the earlier decisions of the court are collated.

Bearing in mind that the N. B. Carlstein Company, the corporate debtor, the disposition of whose property is the main question in this case, is a Michigan corporation, the significance of this harmony between the federal and state courts of last resort is important and decisive. The complainants knowingly dealt with their debtor as such a corporation, and must be conclusively held

to have contracted with reference to all dealings of the corporation with its property which have the sanction of the laws of the state under which it exists, and from which it derives its powers. The N. B. Carlstein Company, therefore, had a right to deal with its property precisely as an individual may, except in those particulars in which it is restrained by law, and, as to those particulars, its acts are not brought into question. Its authority included the power to execute an assignment for the benefit of its creditors (Town v. Bank of River Raisin, 2 Doug. [Mich.] 530), and to prefer one creditor to another. It might also execute its chattel mortgage to secure preferred creditors where such instrument did not provide for any transfer to the mortgagee for any other purpose than to secure the payment of honest debts. See, also, Hills v. Furniture Co., 23 Fed. 432; Brown v. Furniture Co., 7 C. C. A. 225, 58 Fed. 286. In the case at bar, as in that in 90 Mich. 345, 51 N. W. 512, the corporation had not ceased to be a going concern at the time that the mortgages were given, nor had its officers abandoned hope of continuing business. It is this fact which distinguishes this case from Manufacturing Co. v. Hutchinson, 11 C. C. A. 320, 63 Fed. 496, which, in important particulars, is an authority for the conclusions here reached. The bill, it is true, charges that the corporation had no expectation at the time of the execution of the chattel mortgages of further carrying on its business; but this is denied by the answer under oath, which was not waived by the bill, and, even if it were, the complainants cannot deprive the answer, when thus verified, of its ordinary effect. Clements v. Moore, 6 Wall. 299, 314. If a plaintiff in equity fails to expressly waive the oath of the defendant to his answer, the answer must be given under oath, and is evidence. Conley v. Nailor, 118 U. S. 127, 134, 6 Sup. Ct. 1001, 1005. But, independent of these authorities, the answer, being responsive to the bill and denying its allegations, must be taken as true upon this hearing. Vigel v. Hopp, 104 U. S. 441; Carpenter v. Insurance Co., 4 How. 185; File Co. v. Garrett, 110 U. S. 288, 4 Sup. Ct. 90; Morrison v. Durr, 122 U. S. 518, 7 Sup. Ct. 1215. Under the authority of Bank of Montreal v. J. E. Potts Salt & Lumber Co., supra, the assets of a Michigan corporation do not become a trust fund for pro rata distribution among all of its creditors until steps are taken under the provisions of chapter 282, 2 How. Ann. St. The case last cited is also definitive of the powers of corporations in their dealings with their officers, and is in consonance with the decisions of the supreme court of the United States upon that point.

The fact that Miller was the president of the corporation in no degree impairs his title to the securities which he holds for the payment of his just claims against the company. That he is its creditor is clear, and that he is also contingently liable as indorser or guarantor of its indebtedness to the banks and others, and has otherwise become personally liable for debts of the corporation in case the latter should fail to meet its obligations, is established beyond all question. That he incurred these obligations in an honest endeavor to aid the company in which he was interested, and

doubtless at times when it was in extreme need of financial assistance, and that, so far as appears upon the hearing, he has taken no advantage of its necessities or of his position as its president and director in obtaining the security he holds, and, in short, that he is an honest creditor of the corporation, are all facts which sustain his claim to payment of his debt. The fact that he is the president of the company is neither legal nor equitable ground per se for depriving him of the right to enforce securities honestly obtained, or putting him upon a worse footing, in any respect, than other creditors of his debtor. This has so long been the law of Michigan, as held by the supreme court of the state, and equally the doctrine of the supreme court of the United States, that it may be fairly regarded as legally notified to all persons dealing with corporations. Kendall v. Bishop, 76 Mich. 634, 43 N. W. 645; Oil Co. v. Marbury, 91 U. S. 587. In the latter case it is characteristically said in the vigorous language of Mr. Justice Miller:

"While it is true that the defendant, as a director of the corporation, was bound by all those rules of conscientious fairness which courts of equity have imposed as the guides for the dealings in such cases, it cannot be maintained that any rule forbids one director among several from loaning money to the corporation, when the money is needed, and the transaction is open and otherwise free from blame. No adjudged case has gone so far as this. Such a doctrine, while it would afford little protection to the corporation against actual fraud or oppression, would deprive it of the aid of those most interested in giving aid judiciously, and best qualified to judge of the necessity of that aid, and of the extent to which it may be safely given."

These remarks are strikingly applicable to the relations of defendant Miller to the corporation. He was its president and a large holder of its stock. It is conceded that no one had a greater interest in its success, and therefore none could have a stronger motive than he, in promoting, by all means in his power, the conduct of its business and the maintenance of its credit to which he seems to have pledged his individual property to a large amount. It is obvious, also, that the only fund to which he can resort for payment of his debt is the property of his debtor. There is no equitable principle which would require him to stand by in silence, and witness the appropriation by others, who have no lien, of the property which his courage and means have preserved. The enforcement of his security is the only mode left him to make his money, and this is obviously, upon the facts stated in the bill, a scanty fund. But, whatever its amount, he should not be restrained from realizing it.

2. The second position urged in support of the bill is clearly ill founded. The complainants are simple contract creditors of the N. B. Carlstein Company. Their claims have not been reduced to judgment, and they have no express lien by mortgage, trust deed, or otherwise. The general rule is well settled that a creditors' bill must be preceded by a judgment at law, and cannot be maintained before an attempt has been made to collect such judgment by the issue of execution thereon. Jones v. Green, 1 Wall. 330; Adler v. Fenton, 24 How. 407; Day v. Washburn, Id., 353; Taylor v. Bowker, 111 U. S. 110, 4 Sup. Ct. 397; Tube Works Co. v. Ballou,

146 U. S. 517, 523, 13 Sup. Ct. 165; Bank v. Dwight, 83 Mich. 189, 47 N. W. 111. "Such creditors," says Mr. Justice Brewer in Hollins v. Iron Co., supra, "cannot come into a court of equity to obtain the seizure of the property of their debtor, and its application to the satisfaction of their claims, notwithstanding the statute of the state may authorize such a proceeding in the courts of the state. The line of demarkation between equitable and legal remedies in the federal courts cannot be obliterated by state legislation." To the same effect is Cates v. Allen, 149 U. S. 451, 13 Sup. Ct. 883, 977; Scott v. Neely, 140 U. S. 106, 11 Sup. Ct. 712. It is observable, also, that a creditors' bill should be brought for the benefit of the complainant and all other creditors similarly situated who may come in and become parties to the cause and present their rights. "A few creditors will not be permitted to bring a bill of this sort for an accounting and administration of the assets without saying in the bill that it is brought on behalf of themselves and all of the rest of the creditors." Story, Eq. Pl. p. 104, § 99; Brown v. Ricketts, 3 Johns. Ch. 553–555; Hornor v. Henning, 93 U. S. 233; Pullman v. Stebbins, 51 Fed. 10. This equitable requirement is not met by the bill in this case, the ninth paragraph of which prays "that the collateral security in the hands of the banks aforesaid, including such securities as are the property of said Miller, should be applied to the payment of any indebtedness of said the N. B. Carlstein Company to said banks, and the other property of said the N. B. Carlstein Company should be applied, first, to the payment in full of the indebtedness of said company to complainants, and that the remainder thereof should be distributed pro rata among the other creditors of said company, including said banks." This is not an offer on the part of complainants to do equity, but in terms asks a preference which has no equity to commend it. The authorities last cited are persuasive that the want of this essential feature of the bill, and, a fortiori, the inequitable preference asked in the paragraph quoted, are fatal defects. But we do not rest our decision upon that ground alone, but pass to the contention made by complainants that the institution of garnishment proceedings against the defendants entitle the complainants to practically the same standing accorded by courts of equity to judgment creditors, by giving them a lien upon the property and moneys garnished.

Garnishment proceedings are sometimes loosely referred to as conferring a lien upon the money or property in the hands of the garnishee. However this may be under statutes which give the proceedings that effect, it cannot be asserted under the garnishment law of Michigan. Their express provision is (3 How. Ann. St. § 8059) that:

"From the time of the service of the writ, the garnishee shall be deemed liable to the plaintiff to the amount of monies, goods, chattels, and effects under his control belonging to the principal defendant or of any debts due or to become due from such garnishee to the principal defendant or of any judgment or decree in favor of the latter against the former. and for all property, personal and real, money, goods, evidence of debt or effects of the principal

defendant which such garnishee defendant holds by conveyance, transfer, or title that is void as to the creditors of the principal defendant and for the value of all property, personal and real, money, goods, chattels, evidences of debt or effects of the principal defendant which such garnishee defendant received or held by a conveyance, transfer or title that was void as to creditors of the principal defendant and such garnishee defendant shall also be liable on any contingent right or claim against him in favor of the principal defendant."

Apparently, the sole purpose and effect of this statute was to add to the liability of the principal defendant the personal responsibility of the garnishee for the property of the debtor, of any description, in the hands of the garnishee at the time of the service of the writ.

By section 8068 of the same statute it is provided that:

"The affidavit for the writ of garnishment shall be held and considered as a declaration of the plaintiff in trover against the garnishee as defendant where the garnishee is chargeable for property and for money had and received when he is chargeable upon indebtedness against the garnishee."

Manifestly, neither of these actions contemplates the enforcement of a lien, but simply the application of the plaintiff's demand when that is established, and, alternatively and contingently, the personal liability of the garnishee. Authority is conferred by the statute for the issue of execution, and its levy upon the property, money, and effects in the hands of the garnishee when served; and his failure to expose for execution such property and effects after the plaintiff has become entitled to levy thereon renders the garnishee defendant personally liable in his own goods and estate to the amount of such judgment.

The statute regulating attachments (section 7994, 2 How. Ann. St. Mich.) expressly enacts: "Such attachment shall bind the goods and chattels so attached from the time they were attached." There seems to be no equivalent enactment in the garnishment act,—nothing which expressly or by implication creates an incumbrance on the property which would adhere to it if transferred. But even if it were conceded that this statutory proceeding, by the analogy of its effect upon the property of the debtor to that of a statutory or contract lien, appropriates the property to the use of the creditor sub modo, this would not avail the complainants, who seek to make it the foundation of equity jurisdiction. The very completeness and amplitude of the statutory remedy by garnishment is the strongest possible denial of complainants' right to supplement those proceedings by a concurrent suit in equity.

By section 8091, 3 How. Ann. St. Mich., it is provided that:

"If any person garnished shall have in his possession any of the property aforesaid of the principal defendant which he holds by a conveyance or title that is void as to creditors of the defendant, or if any person garnished shall have received and disposed of any of the property aforesaid of the principal defendant, which is held by a conveyance or title that is void as to creditors of the defendant, he may be adjudged liable as garnishee on account of such property and for the value thereof, although the principal defendant could not have maintained an action therefor against him."

This section was construed in Heineman v. Schloss, 83 Mich. 158, 47 N. W. 107, as enabling the creditor, by and through the agency

of a garnishment proceeding, to reach, and subject to the payment of his judgment against the principal debtor, property, or the proceeds thereof, which the garnishee might hold by conveyance or title that was fraudulent as to creditors of such debtor; and it was held that its effect was not to enlarge the liability of the defendants, but to render them liable at law, instead of in equity as formerly. This construction was followed in Treusch v. Ottenburg, 4 C. C. A. 629, 54 Fed. 867.

Instead, therefore, of the proceedings in garnishment, put forward as the basis of complainants' right to equitable aid, inuring to their benefit, their necessary effect and operation are exactly the contrary. The remedy they have sought as subsidiary to their status as suitors in equity is in itself "a plain, adequate, and complete remedy at law," whose perfect adaptation to the investigation of the issues here tendered prohibits the exercise of equity jurisdiction in this cause. If Miller or Pratt and other of the defendants are holding the property conveyed by the chattel mortgages, and those instruments are void or claimed to be so by complainants, the garnishment act furnishes machinery as efficient for the ascertainment of that fact as that afforded by a court of equity. See, also, Fearey v. Cummings, 41 Mich. 376, 1 N. W. 946; Crippen v. Fletcher, 56 Mich. 389, 23 N. W. 56.

In Killian v. Ebbinghaus, 110 U. S. 568, 573, 4 Sup. Ct. 235, quoting from Hipp v. Babin, 19 How. 271, 278, the court says:

"That whenever a court of law is competent to take cognizance of a right and has power to proceed to a judgment which affords a plain, adequate, and complete remedy without the aid of a court of equity, the plaintiff must proceed at law, because the defendant has a constitutional right to a trial by jury."

This principle, though there applied to an ejectment bill, is obviously of equally direct bearing in this case; and it is there further held that the objection to the jurisdiction may be enforced by the court sua sponte, though not raised by the pleadings or suggested by counsel. The following cases are instances of the application of the same doctrine: Wright v. Ellison, 1 Wall. 16; Oelrichs v. Spain, 15 Wall. 211; Buzard v. Houston, 119 U. S. 347, 351, 7 Sup. Ct. 249; Whitehead v. Shattuck, 138 U. S. 147, 11 Sup. Ct. 276; Mills v. Knapp, 39 Fed. 592.

A further objection to the maintenance of this suit, because of any supposed interest in the property of the corporation acquired by the garnishment proceedings, is suggested by the possible failure of the complainants in those proceedings. The issue in those cases is triable before a jury, by the express terms of the statute; and, as the remedy is purely legal and statutory, the defendants cannot be deprived of their constitutional right to such trial. It cannot be assumed in favor of the jurisdiction of this court that the plaintiffs will prevail in such trials at law. If complainants fail, the only ground which they urge as giving them a standing to invoke equitable relief is disproved, and the effect of the proceedings, both here and at law, will be made doubly disastrous to the defendants. The court itself would be put in the humiliating posi-

tion of having entertained a jurisdiction which a court of equally plenary powers, in another form of proceeding, to whose jurisdiction complainants first resorted, had pronounced altogether baseless. If plaintiffs should prevail in the garnishment suits, their success will have demonstrated that the aid of a court of equity was not needed for their relief. In either event the result to the defendants must necessarily be most unfortunate, and the injustice of harassing them with double litigation for the same cause of action would be undeniable. Added to this is the fact that the claims of the defendant banks are indisputably valid, and the validity of their mortgage securities is not attacked. The only relief sought against them is that they may be compelled to surrender some of the securities which they hold for the debts covered by the mortgage; and this, too, at the instance of creditors who have no lien upon the property of the mortgagor, nor any claim which can be maintained against the person whose obligations they ask may be thus indirectly appropriated to the use of themselves, in preference to other unsecured creditors of the N. B. Carlstein Company. The bill reveals no special considerations which ought to take complainants' case out of the general rule that a creditor holding collaterals is not bound to apply them before enforcing his direct remedies against the debtor and his effects. Lewis v. U. S., 92 U. S. 618.

Without considering other questions which were discussed upon the argument, it is sufficient to say that the reasons already given, and especially the want of equity and the adequacy of the garnishment proceedings to afford complainants all the relief to which they are entitled, compel the dismissal of the bill. The restraining order in this case was improvidently granted, and is vacated and set aside. The injunction is denied, and the bill is dismissed, with costs.