SAMUEL J. WHITE, RECR., STAEHLY BREWING CO.

*vs.*

EMIL STAEHLY

| Superior Court | New Haven County | File No. 55219 |
|---|---|---|

MEMORANDUM FILED FEBRUARY 23, 1939.

*Robert J. Woodruff,* and *Arthur Klein,* of New Haven, for the Plaintiff.

*Joseph Weiner,* of New Haven, for the Defendant.

SIMPSON, J. Prior to June 9, 1936, the defendant, Emil Staehly, was in the business of bottling beverages and the sale thereof. He was doing business under the trade name of Staehly Bottling Works, with his place of business in West Haven. He bottled and sold beer and other beverages, the beer at that time being purchased from different breweries. Prior to that stated date, he bought from a receiver in bankruptcy of the Rex Brewing Company, the land and the buildings of that company and all the equipment and personal property then in the building. The purchase price was $20,000. He made the purchase for the purpose of manufacturing beer for his bottling business.

On June 9, 1936, he caused a certificate of incorporation to be filed with the secretary of state in the name of The Staehly Brewing Company, with authorized capital stock of $100,000. He, his wife, Rose Staehly, and a brother, Alfred Staehly, were named as incorporators. The certificate was executed on June 16, 1936, and filed with the secretary of state on June 17, 1936.

So far as appeared no subscription to the capital stock was ever made, but on June 16, 1937, there were issued to Emil Staehly, the defendant, 994 shares of the par value of $100, five shares to Rose Staehly, and one share to Alfred Staehly, and all were issued as fully paid and nonassessable. Thereafter the defendant, Emil Staehly, conveyed and transferred to the Staehly Brewing Company the land and buildings and equipment he had acquired from the Rex Brewing Company in full payment of all of the stock.

The by-laws were adopted on June 16, 1936, and from that date to December 5, 1936, so far as it appears, no meeting of the directors or stockholders was held. A meeting of December 5, 1936, was held for the purpose as hereinafter stated.

The by-laws provided that "A majority of the outstanding stock, exclusive of treasury stock, shall be necessary to constitute a quorum at meetings of the stockholders", and that a majority of the stock represented at any meeting "shall decide any question brought before such meeting."

The defendant caused himself to be elected director, president and general manager, and his wife, Rose Staehly, director and secretary, and his brother, Alfred Staehly, director and vice president. The affairs of the company were wholly within his hands. If there ever was a one-man corporation this was one, and besides was organized, as the defendant stated, to manufacture beer for the Staehly Bottling Works, which was himself.

At the very outset the company was without working capital. It did not have anything with which to pay the incorporation fees and expenses connected therewith, nor the Federal tax on beer, which had to be paid as the beer was manufactured and barreled, nor with which to meet payrolls.

The defendant began to advance money to the corporation to enable it to effect the incorporating and pay for the liquor permit, revenue stamps, payroll and expenses generally. The defendant was credited on the books of the company for the advancements so made, and on December 5, 1936, there was so credited to him a sum in excess of $23,000.

After the company began to manufacture beer he caused beer to be delivered to his bottling works. At the beginning these deliveries were carried on the books of the company as sales, but in the fall of 1936, by journal entry he caused these

"sales" to be changed to "transfers." This change was made for the purpose of avoiding if possible the payment of the revenue tax on "sales." The "sales" or "transfers" were charged on the books of the company at $10 per barrel, which was always less than the cost of manufacture.

Sometime in the fall of 1936, the accountant who audited the books monthly, noticed that the "advancements" were getting to be heavy, and he suggested to the defendant that he ought to take a mortgage for his security. On December 5, 1936, the defendant and his wife and brother Alfred Staehly, joined in a waiver of notice of a special combined meeting of the stockholders and directors of the company. At the time the defendant was the owner of record of 930 shares of the company, he having on July 15, 1936, caused 45 shares of his original holding to be transferred to his wife, and 19 shares to his brother. There were present at the meeting all three of the directors and stockholders, and the defendant acted as the chairman. Mr. Staehly, the defendant, stated at the meeting "that from time to time he had advanced money for the purpose of conducting and carrying on the business of the Staehly Brewing Company, which amounted to $23,000, and that he wished to be secured for these advances."

It was therefore voted, the defendant participating, "that in order to protect and secure the *loans* made by the said Emil Staehly to the incorporation, the proper officers. . . .are hereby authorized and *instructed* to execute a mortgage note and deed' in the name of the corporation upon all the real and personal property of the corporation for the purpose of securing the sum of $23,000", and further the vice president, Alfred Staehly, was authorized and empowered to execute and sign the note and mortgage in question in the name of the company, which were to be attested by the secretary, and the seal of the corporation attached to said mortgage deed and note, and the same delivered to Emil Staehly, the defendant.

Thereupon Alfred Staehly, as vice president, did execute and deliver to Emil Staehly, the defendant, the mortgage, attested by Rose Staehly as secretary, Exhibit A, attached to the complaint. The mortgage covered all the land, buildings and personal property of whatever nature, not including accounts receivable.

On December 5, 1936, the company owed unsecured creditors, other than Emil Staehly, between six and seven thousand'

dollars, and owed to Emil Staehly, as appeared by the books, a sum in excess of $23,000. It had current assets, including cash in the bank, which was nominal, of approximately $20,000, including accounts receivable of approximately $7,000, which were of uncertain actual value. The company had from its inception lost money in its operation; the amount of net loss on November 30, 1936, was $1,710.08.

While considering the land and buildings and equipment it was solvent as that term is generally defined, it could not have met its obligation without selling its plant and equipment. It was clearly, therefore, in failing circumstances.

The defendant testified that he took the mortgage for his own "protection." The only parties against whom he could seek protection were the unsecured creditors. If the mortgage was not in actual fraud of the unsecured creditors, it certainly tended to delay and hinder them in collecting their claims.

While the advances to the corporation were called advances and were carried on the books of the company to the credit of the defendant, a fair inference from the circumstances is that the defendant "advanced" the money for his own benefit as working capital.

It may also be noted the corporation could not do any official act except upon the decision of a majority of the stock. The defendant therefore stands in the position of giving himself a mortgage which would tend to hinder and delay the creditors, not only the creditors existing at the time, all of whom have not been paid, but future creditors who did not have actual knowledge of the mortgage.

It is the conclusion of the court that upon the facts, that while the mortgage may have been good as between the company and defendant, it is voidable as to the creditors.

In this respect, it seems to the court this case falls within the well considered case of *Richards Co., Inc. vs. Mayfair, Inc.,* 287 Mass. 280, and cases cited therein. In that case the court said, at p. 290, Sherman being in a position similar to this defendant: "If the evidence established a loan to the corporation, Sherman could not as against creditors of the corporation enforce the mortgage, because it confessedly was given with actual intent to hinder, delay and defraud creditors of the corporation. G.L. (Ter. Ed.) c. 109A, §7. *Crowninshield vs. Kittridge,* 7 Met. 520. *Dondis vs. Lash,* 227 Mass. 477.

If the evidence established a loan and mortgage without actual intent to defraud creditors of the corporation, the corporation could not secure Sherman, its treasurer and one of its board of directors, in preference to other creditors....If the evidence established not a loan to the corporation but a capital contribution, Sherman was not a creditor of the corporation and the mortgage given to secure his interest was void. In any view of the evidence the mortgage was void as against creditors of the corporation."

The defendant cites many cases which he claims sustains his view that the mortgage was valid. One of these cases on which he strongly relies, is *Smith vs. Skeary,* 47 Conn. 47. In that case a corporation transferred a quantity of goods to two directors to be sold and the proceeds applied on a debt which the corporation owed them jointly. But it did not appear that they had anything to do with the transfer.

In *Sanford Fork & Tool Co. vs. Howe Brown & Co., Ltd.,* 157 U.S. 312, the mortgage was given by a corporation to six individuals who were its stockholders and directors, to secure them for a liability they had incurred in endorsing notes of the corporation at a bank and to encourage them to make future loans to the corporation. The court held that the corporation, acting in good faith, might give a mortgage to directors in order to induce a continuance of the credit. It did not appear that the directors participated in the giving of the mortgage.

The case of *Childs vs. Carlstein Co.,* 76 Fed. 86, simply holds that there is no rule which forbids one director among several from loaning money to a corporation when the money is needed (in the course of its business) and the transaction is open and otherwise free from blame, and that a mortgage given to secure such a loan is good as against creditors. There it was the president of a large corporation who loaned the money. That case can clearly be distinguished from the present one in that among other things the mortgage was not given for the sole protection against existing creditors, and was not given under such circumstances as to delay or hinder creditors, and was not given by a one-man corporation to himself so as to protect him against creditors for money advanced as capital.

The case of *Briggs & Co. vs. Harper Clay Products Co.,* 150 Wash. 235, is more similar to the instant case than any other cited by the defendant. The question in that case was whether the claimant should be permitted to participate as a creditor in

the assets of the receivership. The court held he could. The case of *Wheeler vs. Smith*, 30 Fed. (2d) 59, was to similar effect. The question of participation is not before this court.

In *Spencer vs. Champion*, 9 Conn. 535, one Alexander became the sole owner of all the capital stock of a corporation, and it was sought to hold him liable for the debts of the corporation. The court held otherwise.

The defendant in the instant case organized the Staehly Brewing Company for his own personal business and without working capital, and after its organization he treated and managed it as his own; the company was not successful, and when it was in a failing condition he sought to protect himself against the other creditors by giving himself a mortgage of all its property. This brings the case squarely within the *Mayfair* case and other cases cited *In re Rickshaw, Inc.*, 12 Fed. Supp. 425, where the *Mayfair* case is construed. The effect of the mortgage was to hinder and delay other creditors in collecting their just claims. This, it seems to the court, rendered the mortgage voidable as to creditors, whether the "advancements" for which the mortgage was given were contributions to capital or merely loans from time to time.

Judgment is therefore rendered for the plaintiff upon the complaint and counterclaim and the mortgage declared null and void as to the plaintiff.